601 P.2d 1329

Joan Dickinson HURT, surviving parent and personal representative of Bruce Edward Dickinson, deceased, on behalf of herself and Bruce William Dickinson, a child of the deceased, Petitioners,

v.

SUPERIOR COURT OF the STATE OF ARIZONA, in and for the COUNTY OF MARICOPA, and the honorable William P. French, Judge of the Superior Court, and Ronald S. Bookbinder and Helaine B. Bookbinder, his wife, real parties in interest, Respondents.

No. 14233.

Supreme Court of Arizona,
In Banc.

Sept. 27, 1979.

Rehearing Denied Nov. 6, 1979.

Stephan & Lyding by Robert Stephan, Jr., Phoenix, for petitioners.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Jerry L. Cochran, Phoenix, for respondents.

CAMERON, Chief Justice.

We accepted jurisdiction of this petition for special action filed by Joan Dickinson Hurt, surviving parent and personal representative of Bruce Edward Dickinson, deceased, on behalf of herself and Bruce William Dickinson, child of the deceased. Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must decide the following questions:

1. Is an after-born "illegitimate" child a "surviving child" under Arizona's wrongful death statute?

2. If so, must paternity be established as a condition precedent to bringing the wrongful death action and, if so, what is the proper procedure?

3. Can both a surviving parent and a surviving child of the deceased be proper parties plaintiff under the wrongful death statute?

4. Do the attorneys for the plaintiff/petitioners have a conflict of interest if they represent both the child and the parent of the deceased?

The facts necessary for a determination of this matter are as follows. Bruce Edward Dickinson died on 17 February 1976, the morning he was to have been married to the mother of his son. He died in a house fire allegedly caused by a negligently maintained and defective floor furnace in a home rented from Ronald and Helaine B. Bookbinder, the respondent real parties in interest of the special action. On 18 August 1976, Bruce William Dickinson, the alleged posthumous child of the decedent, was born.

A wrongful death action was filed by decedent's mother, Joan Dickinson Hurt, on behalf of herself, as surviving parent, and the posthumous child. One month before trial, the defendants (Bookbinders) moved for summary judgment urging that:

1. the child cannot recover because he is posthumous and illegitimate;

2. the parent cannot recover when there is a surviving child;

3. paternity must be established in a separate and independent proceeding before the action for wrongful death may be brought; and

4. counsel cannot represent the mother, as personal representative, on behalf of herself and the child without conflict of interest.

The trial judge decided that the paternity of the after-born child had to be legally established in a separate proceeding prior to the trial of the wrongful death case. The trial judge stated:

"(3) Paternity of the after born child must be established in a formal heirship hearing prior to the trial of the wrongful death case. The Court considers this a condition precedent. In the paternity proceedings the mother of the decedent

shall be represented by independent counsel;

"(4) If paternity of the child is established the mother of the decedent shall be dismissed as an improper Plaintiff as a surviving parent;

"(5) If paternity of the child is not established, the child shall be dismissed as an improper Plaintiff and in that instance the mother of the decedent would be the proper party Plaintiff as a surviving parent;

"(6) So that the record is clear, (4) and (5) above are based upon the patent, clear and unambiguous legislative intent expressed in the statute or by the use of the disjunctive 'or' rather than the conjunctive 'and' as set forth in the 1887 statute;"

The trial court then vacated the trial date of the wrongful death action and this petition for special action followed.

## IS AN AFTER–BORN "ILLEGITIMATE" CHILD A "SURVIVING CHILD" UNDER ARIZONA'S WRONGFUL DEATH STATUTE?

The law in effect at the time of decedent's death and at the time of the child's birth read as follows:

"Every child is the legitimate child of its natural parents and is entitled to support and education as if born in lawful wedlock." A.R.S. § 8–601.

For purposes of intestate succession, our statute reads:

" * * * a person born out of wedlock is a child of the mother." A.R.S. § 14–2109.2.

And that person is also the child of the father if

"(b) The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof * * *." A.R.S. § 14–2109.2(b).

 It has long been the policy of this state to protect innocent children from the omissions of their parents. We hold that "illegitimacy" is no bar to recovery by a

surviving child under the wrongful death statute. (A.R.S. § 12–611, et seq.)

Nor is being born posthumously a bar to recovery. Our intestate succession laws provide "[r]elatives of the decedent conceived before his death but born thereafter inherit as if they had been born in the lifetime of the decedent." A.R.S. § 14–2108. We hold that a child unborn at the time of the death of the parent is included with the term "children" for whose benefit a wrongful death action may be maintained. *Boise Payette Lumber Co. v. Larsen,* 214 F.2d 373 (9th Cir. 1954); *Texas & P. Ry. Co. v. Robertson,* 82 Tex. 657, 17 S.W. 1041 (1891).

## MUST PATERNITY BE ESTABLISHED AS A CONDITION PRECEDENT TO FILING THE WRONGFUL DEATH ACTION, AND, IF SO, WHAT IS THE PROPER PROCEDURE?

There would appear to be three statutory methods of determining paternity in Arizona. Each method has its own purpose. First, as was pointed out above, our law of intestate succession, A.R.S. § 14–2109, provides for the establishment of paternity after the death of the father "by clear and convincing proof." There is no set procedure set forth in the statute and nothing to indicate that it must be in a separate action. By its location in the Code (Title 14, Decedents' Estates, Chapter 2, Intestate Succession and Wills, Article 1, Intestate Succession) and the subject matter, this provision appears to be concerned primarily with the rights of inheritance of the child.

Second, under the authority of A.R.S. § 12–843, proceedings to establish paternity (or maternity) may be commenced in the Superior Court by the mother, father, guardian, or best friend of the child born out of wedlock. When the child requires state or federal financial assistance, the state may be plaintiff or co-plaintiff. A.R.S. § 12–843.4. The purpose of this statute appears to be to provide financial support for the child from the natural parent. The proceedings are frequently adversary— the alleged father defending as in a civil

suit. The statutes do not encompass the problem of the deceased putative parent.

The third statutory method for determining paternity is the procedure to establish identity:

"§ 12–621 Procedure to establish identity of persons

"A. When a person desires to establish his identity or fix his birthright and parentage, or both, he may file in the superior court of the county where his residence is maintained, an application setting forth his reasons for desiring to establish his identity, birthright or parentage. The court may, after hearing the application, enter judgment establishing identity or birthright and parentage, or both, of such person.

"B. The guardian or next friend of a minor may file such application in the county where the minor's residence is maintained, or if the minor is sixteen or more years of age he may file the application and the court may hear the application and enter judgment thereon as provided for other persons."

This proceeding for establishing identity is usually an ex parte proceeding, although A.R.S. § 12–622(A) provides for notice to other "parties interested" if the court deems it proper. These statutes (A.R.S. §§ 12–621, et seq.) follow directly the wrongful death statutes (A.R.S. §§ 12–611, et seq.).

As far as we can discern from the pleadings before us, no action to establish the paternity of Bruce William Dickinson has been brought under any of these procedures.

▮▮▮ The problem we face as to all three statutory methods of determining paternity is that the defendant in the wrongful death action would appear to have no standing to oppose the determination of the question. He would be an outsider. We believe that the defendant in a lawsuit may always question whether the plaintiff is a proper party if the issue is raised in a timely manner. *Ballard v. Lawyers Title of Arizona,* 27 Ariz.App. 168, 552 P.2d 455

(1976). Rule 9(a) of the Arizona Rules of Civil Procedure, 16 A.R.S., contemplates that the issue of competency to sue must be specifically raised.

> "It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

And our Court of Appeals has held that this issue should be raised prior to trial:

> "There was no averment in Allan Arthur Transportation's answer or any other pleading raising an issue as to the capacity of the plaintiff Hilligoss to sue. With full discovery being allowed to parties under modern rules of procedure, matters of this kind should be raised prior to trial, particularly when a jury trial is scheduled * * *." *Salinas v. Kahn,* 2 Ariz.App. 181, 186, 407 P.2d 120, 125 (1965).

▮ Assuming that the motion for summary judgment did, in fact, raise the issue of capacity to sue, we do not believe it was an abuse of discretion to require a determination of this matter prior to trial. We do not agree, however, that it must be a separate, independent action: it can be determined at a pretrial hearing on the issue of the plaintiff's capacity to sue properly raised by the pleadings.

## CAN BOTH A SURVIVING PARENT AND A SURVIVING CHILD OF THE DECEASED BE PROPER PARTIES UNDER THE WRONGFUL DEATH STATUTE?

A.R.S. § 12–612 reads:

> "§ 12–612. Parties plaintiff; recovery; distribution

> "A. An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.

> \* \* \* \* \* \*

> "C. The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A in proportion to their damages, and if recovery is on behalf of the decedent's estate the amount shall be an asset of the estate."

Arizona's initial wrongful death statute in 1887 followed the original Lord Campbell's Act and stated:

> "The action shall be for the sole and exclusive benefit of the surviving husband, wife, children *and* parents of the person whose death shall have been so caused, and the amount recovered therein shall not be liable for the debts of the deceased * * *." Title XXXVI, 2149, § 5. (Emphasis ours)

In 1901 the statute was amended to provide that the cause of action was for the benefit of the estate rather than for the benefit of any named beneficiaries. *Southern Pacific Co. v. Wilson,* 10 Ariz. 162, 85 P. 401 (1906).

> "To summarize, under the 1887 act, which was a codification of Lord Campbell's Act, it was necessary to show the existence of the beneficiaries named in the statute. The measure of damage was the loss to designated beneficiaries and the proceeds of the action went to the said beneficiaries. In the 1901 statute, it was not necessary to show the existence of any beneficiaries but only to show a wrongful death and the measure of damages was to the estate (in other words, the value of the life lost. *Carlson v. Oregon Short Line & U. N. Ry. Co.,* 21 Or. 450, 28 P. 497 [1892]). The proceeds went to the estate to be distributed according to intestate succession." *Solo-*

**50**

*man v. Harman,* 107 Ariz. 426, 429, 489 P.2d 236, 239 (1971).

In 1956 the legislature amended the statute to provide:

"C. The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A and in the proportions provided by law for distribution of personal estate left by persons dying intestate." A.R.S. § 12–612(C).

Under this statute we held that parents of a decedent had no right to recovery for his death when there were also surviving a wife and children. *Lueck v. Superior Court, County of Cochise,* 105 Ariz. 583, 469 P.2d 68 (1970). We held that the concept embodied in wrongful death recovery is purely statutory and that therefore the statute must be strictly construed. We also held that there was a clear legislative intent to cut off the parents' rights when there are wife and children surviving. 105 Ariz. at 585–86, 469 P.2d at 70–71.

In 1973, the legislature again amended subsection C of A.R.S. § 12–612 to provide as stated above that the amount recovered shall be distributed to the person mentioned in the statute "in proportion to their damages" rather than "in proportions provided by law for distribution of personal estate," as was the case when we decided *Lueck,* supra. Since this amendment was after our opinion in *Lueck,* supra, we believe that the legislature intended section A, which reads "children or parents," to be interpreted in the conjunctive rather than the disjunctive. We therefore hold that both a surviving parent and surviving child may recover for the wrongful death if either has been damaged by the death.

DO THE ATTORNEYS FOR THE PETITIONERS HAVE A CONFLICT OF INTEREST IF THEY REPRESENT BOTH THE CHILD AND THE PARENT OF THE DECEASED?

Because of our holdings on the previous issues, we find no conflict of interest on the part of the law firm for the petitioners. We expect that the firm will fulfill its obligation to both clients, see DR 5–106(A), Code of Professional Responsibility Rule 29(a), Rules of the Supreme Court 17A A.R.S., and will be aware that the infancy of Bruce William Dickinson requires a special concern for his legal rights. *In re Milliman's Estate,* 101 Ariz. 54, 415 P.2d 877 (1966). However, we remind both petitioners and respondents that if a party desires separate counsel, the right must be honored. *Nunez v. Nunez,* 25 Ariz.App. 558, 545 P.2d 69 (1976).

Prayer for relief granted. The matter is remanded for proceedings consistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.