987 P.2d 212

**Louis LAVIDAS and Koula Lavidas, husband and wife, Plaintiffs/Appellees,**

v.

**Lorne M. SMITH, a single man, Defendant/Appellant.**

No. 2 CA–CV 98–0208.

Court of Appeals of Arizona, Division 2, Department A.

Aug. 13, 1999.

Karman Law Offices, P.C. By Howard H. Karman, Casa Grande, Attorneys for Plaintiffs/Appellees.

Wilenchik & Bartness, P.C. By Dennis I. Wilenchik and Robert C. Brown, Phoenix, Attorneys for Defendant/Appellant.

*OPINION*

PELANDER, Presiding Judge.

¶ 1 Defendant/appellant Lorne Smith appeals from the trial court's order granting summary judgment in favor of plaintiffs/appellees Louis and Koula Lavidas quieting title to them on a 100–acre parcel of property in Pinal County. Based on our interpretation of former A.R.S. § 42–381(B) as applied to former § 42–463(A),[1] we vacate the trial court's summary judgment and remand for further proceedings.

**BACKGROUND**

¶ 2 Although the facts relating to the central legal issue in this appeal are essentially undisputed, we view the evidence and reasonable inferences therefrom in the light most favorable to Smith. *Ramirez v. Health Partners of S. Arizona*, 193 Ariz. 325, 972 P.2d 658 (App.1998). In 1987, Smith and the Lavidases acquired a 200–acre parcel of property in Pinal County as tenants in common. Two years later, Smith and the Lavidases voluntarily partitioned the property into two, 100–acre parcels and conveyed by quit claim deeds one parcel to the Lavidases and the other to Smith. Because the county tax records apparently did not immediately "catch up" with the partition, and because neither Smith nor the Lavidases paid the property taxes on the property in 1989 or 1990, taxes became delinquent for the entire parcel.[2] In 1991, a third party, William Alexander, purchased the 1989 and 1990 tax liens on the property from the county.

¶ 3 In 1996, after waiting the requisite five-year period pursuant to former A.R.S. § 42–461, Alexander began administrative foreclosure of the right of redemption in order to obtain a treasurer's deed to the property. The county treasurer then published notice of application for a treasurer's deed in a newspaper of general circulation in Pinal County on August 22 and 29, 1996, pursuant to § 42–463(A). The published notice, however, did not include "the amount of taxes, interest, penalties and charges for which the tax lien was sold," as required by § 42–463(A)(4). That information was included in a notice that the treasurer previously had sent to the Lavidases by certified mail pursuant to former § 42–462, but that notice was returned undelivered due to the expiration of the forwarding order. In October 1996, the county issued a treasurer's deed to Alexander, who recorded the deed in November. Thereafter, Alexander contacted Smith, who purchased the entire property back from Alexander in April 1997.

¶ 4 After discovering in March 1997 that the county treasurer had issued a treasurer's deed to Alexander, the Lavidases filed this action seeking to quiet title to their half of the property and to bar Smith from having or claiming any interest in it. In moving for summary judgment, the Lavidases contended that the deed to Alexander was invalid because the county treasurer's published notice failed to strictly comply with § 42–463(A). Smith opposed the motion and also moved for summary judgment, contending that the published notice "substantially complied with the requirements" of that statute.

¶ 5 The trial court granted the Lavidases' motion and denied Smith's cross-motion. In so ruling, the court concluded that § 42–463(A) "makes clear what the Treasurer should do" and, because "the Treasurer's published notice failed to comply with the statute," the treasurer's deed issued to Alexander was "void and of no force or effect." Accordingly, the court quieted title in favor of the Lavidases as to their parcel and

---

1. Former A.R.S. §§ 42–463 and 42–381 have been renumbered as §§ 42–18255 and 42–18101 respectively. 1997 Ariz. Sess. Laws, ch. 150, § 172. We refer to the former statutes because they were in effect during the relevant time frame.

2. Both Smith and the Lavidases paid their shares of the property taxes on their respective halves of the property for the years 1991 through 1995.

barred Smith "from having or claiming any right or title" to it. This appeal followed the trial court's entry of judgment in favor of the Lavidases pursuant to Rule 54(b), Ariz. R. Civ. P., 16 A.R.S., and its denial of Smith's motion for reconsideration.

## DISCUSSION

¶ 6 "On appeal from a summary judgment, we review de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Ramirez,* 193 Ariz. 325, ¶ 6, 972 P.2d 658, ¶ 6. In addition, issues involving statutory interpretation are questions of law subject to this court's de novo review. *Id.*

¶ 7 During the relevant time frame, § 42–463(A) provided:

A. In addition to mailing notice pursuant to section 42–462, the county treasurer shall publish notice once a week for two consecutive weeks in a newspaper of general circulation in the area in which the property is located, or in a newspaper of general circulation within the county. The published notice shall state the application for a treasurer's deed and shall include:

1. The name of the applicant.

2. A description of the property.

3. The date on which the tax lien was sold.

4. The amount of taxes, interest, penalties and charges for which the tax lien was sold.

5. The last date for redeeming the tax lien.

1996 Ariz. Sess. Laws, ch. 166, § 37. At that time, § 42–381(B) provided:

B. The county treasurer shall secure the payment of unpaid delinquent taxes by using the provisions of this article and articles 7, 8 and 8.1 of this chapter to sell the tax liens provided for in section 42–312 and to foreclose the right to redeem. Insubstantial failure to comply with these provisions does not affect the validity of the assessment and levy of taxes, nor any tax lien on real property for delinquent unpaid taxes, nor the sale of a tax lien or

the foreclosure of the right to redeem by which tax collection is enforced.

1995 Ariz. Sess. Laws, ch. 200, § 1.

¶ 8 "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). As our supreme court recently stated:

If a statute is clear and unambiguous, we apply it without using other means of statutory construction. When an ambiguity exists, however, we attempt to determine legislative intent by interpreting the statute as a whole, and consider "the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." If neither the statute's text nor the statement of legislative intent resolves the exact issue before the court, "we must resolve any ambiguity by considering the legislature's overall purposes and goals in enacting the body of legislation in question."

*Aros v. Beneficial Arizona, Inc.,* 194 Ariz. 62, ¶ 12, 977 P.2d 784, ¶ 12 (1999) (citations omitted).

¶ 9 In addition, we must construe interrelated statutory provisions together, in the context of the overall statutory scheme, and aim to achieve consistency among them. *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 909 P.2d 486 (App.1995). "Whenever possible, we adopt a construction of a statute that reconciles it with other statutes, giving force to all statutes involved." *Lewis v. Arizona Dep't of Econ. Sec.,* 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996). See also *Chaparral Dev. v. RMED Int'l, Inc.,* 170 Ariz. 309, 313, 823 P.2d 1317, 1321 (App.1991) ("We must harmonize apparently conflicting language of different parts of the statute so as to give effect to both.").

¶ 10 The parties agree that the only omission in the treasurer's publication notice was its failure to specify the amount of the taxes, interest, penalties, and charges as prescribed in § 42–463(A)(4).[3] Smith contends § 42–

---

3. According to the county treasurer's affidavit,    "it is the general, customary practice of the trea-

463(A), when read in conjunction with § 42–381(B), is "directory" rather than mandatory and, therefore, the treasurer's deed to Alexander is valid because the county substantially complied with the requirements of § 42–463(A). The Lavidases, on the other hand, contend the legislature intended the provisions of § 42–463(A) to be mandatory by repeatedly using the word "shall" in the statutory language. Thus, they argue, "the treasurer must follow the letter of the statute, and if not, the issuance of the deed is invalid, and the grantee therein takes nothing."

¶ 11 Our supreme court has differentiated mandatory from directory statutes as follows:

> As a general proposition, statutes may be classified as either mandatory or directory. The word "mandatory" is defined as "containing a command." Black's Law Dictionary 1114 (4th ed.1968). Black further states:
>
>> "A 'mandatory' provision in [a] statute is one the omission to follow which renders the proceedings to which it relates void * * *." *Id.*
>
> "Directory" is defined by the same authority as:
>
>> "A provision in a statute * * * which is a mere direction or instruction of no obligatory force, and involving no invalidating consequence for its disregard * * *." *Id.* at 547.
>
> ....
>
>> "... Both mandatory and directory provisions of the legislature are meant to be followed. It is only [because of] the effect of non-compliance that a distinction arises. A provision is mandatory when failure to follow it renders the proceeding to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings."

*Department of Revenue v. Southern Union Gas Co.,* 119 Ariz. 512, 513–14, 582 P.2d 158, 159–60 (1978) (citations omitted). See also *Watahomigie v. Arizona Bd. of Water Quali-*

*ty Appeals,* 181 Ariz. 20, 887 P.2d 550 (App. 1994).

¶ 12 The parties essentially contend that the outcome of our statutory analysis in this matter turns on a blanket construction of § 42–463(A) as either mandatory or directory. We disagree. Because neither interpretation gives meaningful operation to both statutes, we deem the parties' all or nothing approach, based on labeling § 42–463(A) as either mandatory or directory, inappropriate. Rather, we analyze both statutes together in the context of the facts presented here to determine, first, whether § 42–381(B) applies to § 42–463(A) and, if so, whether the county treasurer's failure to include the information prescribed in § 42–463(A)(4) necessarily invalidates the treasurer's deed issued to Alexander.

¶ 13 Section 42–463 and its similar predecessor statutes have been in existence for over sixty years. See 1931 Ariz. Sess. Laws, ch. 103, §§ 49, 50; A.R.S. § 73–835 (1939). In contrast, the legislature added § 42–381 in 1984. 1984 Ariz. Sess. Laws, ch. 317, § 9. Generally, a "more recent, specific statute governs over [an] older, more general statute." *Lemons v. Superior Court,* 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984). See also *Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988) ("[W]hen two statutes truly conflict, either the more recent or more specific controls."). Although both statutes here are quite specific, we must give effect to the more recent enactment.

¶ 14 Section 42–381(B) obligates the county treasurer to "secure the payment of unpaid delinquent taxes by using the provisions of this article and articles 7, 8 and 8.1 of this chapter to sell the tax liens ... and to foreclose the right to redeem." The statute further provides that "[i]nsubstantial failure to comply with these provisions does not affect ... the foreclosure of the right to redeem by which tax collection is enforced." (Emphasis added.) The phrase "these provisions" clearly means "the provisions of this article and

---

surer's office [in Pinal County] to not include [in the published notice] an exact dollar amount of the taxes, interest, penalties and charges, but to include this information on the notice that is sent to all interested parties by certified mail." As-

suming that practice, which we do not condone, is relevant to the legal issue presented here, see *Conway v. Mosher,* 55 Ariz. 467, 103 P.2d 465 (1940), it is neither a determinative nor a persuasive basis for reversing the trial court's ruling.

articles 7, 8 and 8.1 of this chapter" referred to in the first sentence of subsection (B). Because article 8.1 includes § 42–463, the text of § 42–381(B) plainly indicates that it applies to § 42–463(A). The Lavidases do not·contend otherwise. Accordingly, the determinative issue here is whether the treasurer's failure to include the amount of taxes, interest, penalties, and charges in the published notice constituted an insubstantial noncompliance with § 42–463(A) for purposes of § 42–381(B).

¶ 15 In support of their position that § 42–463(A) requires strict compliance, the Lavidases rely on several pre–1984 decisions in which treasurer's deeds were voided. Those cases are inapposite, however, because they are clearly distinguishable or involved issues not raised or relevant here. See, e.g., *Schmitt v. Sapp,* 71 Ariz. 48, 223 P.2d 403 (1950) (defect in publication notice that shortened statutory redemption period directly compromised plaintiffs' redemption rights); *Stoltz v. Maloney,* 129 Ariz. 264, 630 P.2d 560 (App.1981) (multiple statutory violations, including deficiency in required number of publications, voided deed); *Brandt v. City of Yuma,* 124 Ariz. 29, 601 P.2d 1065 (App.1979) (question of fact as to sufficiency of personal notice to city precluded summary judgment for holder of treasurer's deed, when city's special assessment lienholder status was matter of public record); *Olsen v. Goss,* 26_ Ariz.App. 172, 174, 547 P.2d 24, 26 (1976) (failure to provide notice to executor invalidated treasurer's deeds when search of treasurer's own records "would have quickly revealed both the death of the record owner and the name and address of the executor of the estate").

¶ 16 As this court stated in *Stoltz,* "[t]he notice of a tax sale should comply strictly with the requirements of the statute, and the form of notice prescribed by the statute should be followed substantially." 129 Ariz. at 268, 630 P.2d at 564. Unlike in *Stoltz,* however, the defect in the treasurer's publication here related to "the form of notice prescribed by the statute" rather than to the giving of notice itself. *Id.* And, unlike cases such as *Brandt* and *Olsen,* the Lavidases challenge only the form of the treasurer's

published notice in this case, not the treasurer's efforts to give them actual, personal notice. See *Main I Ltd. Partnership v. Venture Capital Constr. & Dev. Corp.,* 154 Ariz. 256, 259, 741 P.2d 1234, 1237 (App.1987) (" 'Constructive notice' is neither notice nor knowledge but is a policy determination that under certain circumstances a person should be treated as if he had actual notice."). In any event, the record does not indicate that the Lavidases kept the treasurer's office apprised of their current mailing address, or that the treasurer knew or should have known that address or the Lavidases' whereabouts in 1996.

■ ¶ 17 Not only are the cases upon which the Lavidases rely distinguishable, they also were decided before the legislature enacted § 42–381(B). "[T]he legislature is presumed to know existing law when it enacts a statute." *Wareing v. Falk,* 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App.1995). See also *Prudential v. Estate of Rojo–Pacheco,* 192 Ariz. 139, 962 P.2d 213 (App.1997). When the legislature amends an existing statute or, as occurred here, enacts a new statute that applies to preexisting statutes, "we presume [the legislature] intended some change in existing law." *McCandless v. United S. Assurance Co.,* 191 Ariz. 167, 174, 953 P.2d 911, 918 (App.1997). See also *RenalWest L.C. v. Arizona Dep't of Revenue,* 189 Ariz. 409, 943 P.2d 769 (App.1997). Thus, to the extent the cases the Lavidases cite arguably suggest that any defect in the form or content of a treasurer's published notice, no matter how inconsequential, automatically voids a related treasurer's deed or necessarily invalidates the foreclosure of redemption rights, the legislature's enactment of § 42–381(B) changed the law in that regard.

■ ¶ 18 As the Lavidases point out, the legislature retained the mandatory wording of § 42–463(A) in 1984 and, apparently during the reformatting of the statute in 1996, added the word "shall" twice more to that subsection. The legislature's continued and repeated use of the word "shall" in § 42–463(A), however, does not alter our conclusion or negate § 42–381(B). Not only can the word "shall" be directive rather than

mandatory, see *Kahn v. Thompson*, 185 Ariz. 408, 916 P.2d 1124 (App.1995), but to conclude otherwise essentially would render the "[i]nsubstantial failure to comply" language in § 42–381(B) meaningless and of no effect as to § 42–463(A), even though § 42–381(B) clearly encompasses § 42–463. Yet, we must "presume that the legislature does not enact superfluous or reiterative legislation." *Phoenix Newspapers, Inc. v. Department of Corrections*, 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997). See also *Main I Ltd. Partnership*. Reading the two statutes together, we conclude that failure to strictly comply with § 42–463(A)(4) does not automatically void a subsequently issued treasurer's deed. That conclusion, in our view, furthers the legislature's stated purpose and objective to "secure the payment of unpaid delinquent taxes" by preserving and enhancing the marketability of tax liens and treasurer's deeds, § 42–381(B), which "is absolutely essential to the maintenance of government." *Consolidated Motors, Inc. v. Skousen*, 56 Ariz. 481, 488, 109 P.2d 41, 44 (1941).

¶ 19 Some of the cases Smith cites illustrate that statutory provisions which on their face appear to be mandatory may, in effect, be rendered directory by other related statutes in order to fulfill legislative intent. See, e.g., *Consolidated Motors, Inc.*, 56 Ariz. at 488, 109 P.2d at 44 ("Many legislatures ... including ... Arizona['s], have passed statutes relaxing the strict requirements of the common law in regard to proof of the validity of tax sales, and the modern tendency of the courts is to regard many provisions heretofore considered to be jurisdictional as merely directory.... [T]his tendency is a salutary one."); *Mohave County v. James R. Brathovde Family Trust*, 187 Ariz. 318, 928 P.2d 1247 (App.1996) (based in part on § 42–381(B), holding that judicial actions to foreclose real property tax liens may be brought in county other than where property is located); *Main I Ltd. Partnership* (strict compliance with mandatory wording of § 33–809(B) not required for valid deed of trust sale in view of other statute shielding sufficiency of required notice from attack). As the court in *Mohave County* recognized, the plain wording of § 42–381(B) clearly indicates that not

every omission relating to tax liens automatically invalidates a transaction relating to it.

¶ 20 That proposition is particularly applicable here when we view the facts in the light most favorable to Smith, as we must. *Ramirez*. Mr. Lavidas acknowledged in his affidavit that in 1989 "there were unpaid real property taxes due to the Pinal County Treasurer in connection with the primary parcel." According to Smith's affidavit, he and Mr. Lavidas "had several conversations regarding the delinquent taxes for the years 1989 and 1990," and Lavidas "assured [Smith] he would cover the taxes." Moreover, the Lavidases do not contend that, had the treasurer's published notice included the information prescribed in § 42–463(A)(4), it would have enlightened them about the tax liens or otherwise affected their actions. See *Main I Ltd. Partnership*, 154 Ariz. at 258, 741 P.2d at 1236 (rejecting appellant's argument that "no showing of harm or prejudice [from defect in third party notice] is required because under Arizona law a sale held without strict compliance with the notice requirements provided in the deed of trust statutes is void").

¶ 21 Under these circumstances, and in an effort to "harmonize" §§ 42–463(A) and 42–381(B) and to "give effect to both," *Chaparral Dev.*, 170 Ariz. at 313, 823 P.2d at 1321, we hold that omission of the information prescribed in § 42–463(A)(4) from the treasurer's published notice in this particular case constituted an "[i]nsubstantial failure to comply" for purposes of § 42–381(B). Because the defect in the published notice neither invalidated Alexander's foreclosure of redemption rights in the property nor rendered the treasurer's deed issued to him void, contrary to the trial court's ruling, we vacate the summary judgment in favor of the Lavidases.

¶ 22 Our inquiry, however, does not end there. Alexander is not a party to this action, having transferred the property to Smith. Although Smith did not file a counterclaim in the trial court, in his answer to the Lavidases' complaint he contended that the entire parcel was his "sole property ... free of any claim by [the Lavidases]." In his cross-motion for summary judgment, Smith urged the trial court to find that he had

"obtained a good title to the property, free from any equities in favor of [the Lavidases]." Similarly, in his opening brief, Smith urges this court to direct entry of summary judgment in his favor.

¶ 23 In evaluating whether Smith is entitled to summary judgment, we must of course view the facts and reasonable inferences therefrom in the light most favorable to the Lavidases. *Ramirez.* As noted above, Smith attested in his affidavit that he and Mr. Lavidas had spoken several times about the 1989 and 1990 delinquencies and that Lavidas had assured him he would pay the taxes. In his affidavit, however, Lavidas denied knowing that "there were any unpaid real property taxes due in connection with either the primary parcel or the Lavidas parcel." Lavidas also stated:

> [A]t the time of [the] voluntary partition [in 1989], there were unpaid real property taxes due to the Pinal County Treasurer in connection with the primary parcel. It was the understanding reached orally between the parties that [the Lavidases] would pay the costs of the preparation of the deeds to accomplish the voluntary partition, and that [Smith] would pay the real property taxes then due on the primary parcel.

¶ 24 Because of these disputed factual issues, and because quiet title actions, though statutorily based, A.R.S. § 12–1101, include equitable considerations, summary judgment in favor of Smith at this stage of the proceedings is inappropriate. See *Kennedy v. Morrow,* 77 Ariz. 152, 155, 268 P.2d 326, 329 (1954) ("a suit to quiet title is one of equitable cognizance" and parties who resort to it "must affirmatively present some equities");. *Chantler v. Wood,* 6 Ariz.App. 134, 430 P.2d 713 (1967).

¶ 25 Finally, both parties seek an award of attorney's fees pursuant to A.R.S. § 12–1103(B), which allows a court to award fees to the plaintiff in a quiet title action if the conditions of the statute are met. See *Lewis v. Pleasant Country, Ltd.,* 173 Ariz. 186, 840 P.2d 1051 (App.1992); *Mariposa Dev. Co. v. Stoddard,* 147 Ariz. 561, 711 P.2d 1234 (App. 1985). The Lavidases are not entitled to an award of fees because they did not prevail on

appeal. *Whittemore v. Amator,* 148 Ariz. 173, 713 P.2d 1231 (1986). Assuming arguendo that § 12–1103(B) permits an attorney's fee award to the defendant in a quiet title action, the record does not indicate that Smith "followed the statutory prerequisites." *Lange v. Lotzer,* 151 Ariz. 260, 262, 727 P.2d 38, 40 (App.1986). Therefore, in our discretion we deny both parties' requests for attorney's fees, without prejudice to their seeking an award of fees from the trial court upon completion of proceedings there.

## DISPOSITION

¶ 26 The trial court's summary judgment and award of attorney's fees in favor of the Lavidases is vacated. The case is remanded for further proceedings consistent with this decision.

CONCURRING: WILLIAM E. DRUKE, Judge, and M. JAN FLÓREZ, Judge.