253 P.3d 627

**Nome EDONNA, a single man, as surviving son of Edward Michael Hintz, Jr., individually, on behalf of himself as the beneficiary of Edward Michael Hintz, Jr., deceased, Plaintiff/Appellee,**

v.

**William Robert HECKMAN, Jr. and Jayne Heckman, husband and wife, Defendants/Appellants.**

**No. 1 CA–CV 10–0402.**

Court of Appeals of Arizona, Division 1, Department E.

May 3, 2011.

Fredenberg & Gullette, PLC By Richard A. Gullette II, Phoenix, Attorneys for Plaintiff/Appellee.

Ehmann DeCiancio, PLLC By Joel DeCiancio and Christopher Robbins, Tempe, Attorneys for Defendants/Appellants.

## OPINION

SWANN, Judge.

¶ 1 The Heckmans appeal from a judgment against them in favor of Nome Edonna for the wrongful death of his biological father, Edward Hintz ("Edward"). They argue that Edonna lacked standing to bring a wrongful death action because he was adopted by his stepfather before Edward's death. The superior court ruled that Edonna was Edward's child, and therefore was a proper person to bring a wrongful death claim under A.R.S. § 12–612. We conclude that the legislature's broad wording of A.R.S. § 8–117(B) deprived Edonna of his legal status as Edward's child for purposes of Arizona's wrongful death statute. Accordingly, we reverse the trial

court's ruling and remand for entry of judgment in favor of the Heckmans.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Edonna's parents, Donna and Edward Hintz, divorced when he was four years old. For a time after the divorce, Edward and Edonna lived in the same state and Edonna would spend weekends and holidays with his biological father. Edward eventually remarried and moved to Connecticut and contact with Edonna stopped for more than a year. Contact resumed when Edonna was about nine years old and Edward moved to Arizona, where Edonna would spend summers. When Edonna was about 15 years old, the summer visits stopped and Edonna began to see his biological father a few times a year during school holidays.

¶ 3 When Edonna was 13 years old, his stepfather adopted him "to make sure [he'd] be taken care of" financially and medically. Edward agreed to the adoption. Because Edonna did not want to lose his biological father's last name, he maintained Edward's last name and hyphenated it with his stepfather's. When Edonna was 17, his mother and stepfather divorced.

¶ 4 Edonna and Edward continued to have sporadic contact. When Edonna was a young adult, contact increased and for the next 12 years he and Edward became close. In June 2001, Edonna changed his last name to "Edonna"—a name he created by joining the names of Edward and Donna.

¶ 5 In October 2005, Edward was killed when a car operated by William Heckman collided with his motorcycle. Edonna filed a negligence and wrongful death action against the Heckmans, and claimed he was the "sole surviving beneficiary of Edward." The Heckmans moved to dismiss the complaint for failure to state a claim upon which relief could be granted,[1] asserting that Edonna was not a proper wrongful death beneficiary as a consequence of the adoption. Edonna responded that he was the "natural born child" of Edward and that A.R.S. §§ 8–117(C) and 14–2114 "specifically extend the right of an

adopted child to assert their rights upon the death of a natural parent." After full briefing and oral argument, the trial court denied the Heckmans' motion.

¶ 6 The Heckmans moved for reconsideration, asserting that A.R.S. § 8–117(B) precluded a claim for wrongful death of a natural parent whose parental rights have been severed and that A.R.S. § 14–2114 was "limited to the issue of inheritance." The trial court ordered a response, and Edonna contended that the statutes must be read together and that references to "child" should be read broadly to give effect to the wrongful death statute. The trial court denied the motion for reconsideration, ruling that the "wrongful death statute allows a child to make a claim based on the death of a parent," reasoning that the statute

> does not state that a child may not make a claim if the rights of the parent have been severed.
>
> ... Further, other than the right to inherit, A.R.S. § 8–117(B) only extinguishes rights existing at the time of the severance. The right to bring a wrongful death action does not exist at that time of severance, but arises only on the death of a parent at some later time. While the right of inheritance is explicitly included in A.R.S. § 8–117, the right to bring a lawsuit based upon the death of a parent is not included. The Legislature could have specified that the right to bring a wrongful death action in the future was included in the rights to be extinguished, but it did not do so.

¶ 7 The case proceeded to trial, and the jury awarded Edonna $40,000 in damages. The Heckmans timely appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## STANDARD OF REVIEW

¶ 8 Although we generally review the trial court's denial of a motion to dismiss for an abuse of discretion, the issue here is one of statutory interpretation, which we review de novo. *Keenen v. Biles,* 199 Ariz. 266, 267, ¶ 4, 17 P.3d 111, 112 (App.2001). When in-

---

1. Because a letter written by Edonna was attached to the motion to dismiss, the Heckmans

alternatively presented that motion as one for summary judgment.

terpreting statutes, "our central goal 'is to ascertain and give effect to the legislature's intent.'" *Yarbrough v. Montoya–Paez,* 214 Ariz. 1, 5, ¶ 12, 147 P.3d 755, 759 (App.2006) (quoting *Washburn v. Pima Cnty.,* 206 Ariz. 571, 575, ¶ 9, 81 P.3d 1030, 1034 (App.2003)). "'[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.'" *City of Sierra Vista v. Dir., Ariz. Dep't of Envtl. Quality,* 195 Ariz. 377, 380, ¶ 10, 988 P.2d 162, 165 (App.1999) (quoting *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (alteration in original)).

## DISCUSSION

### I. THE RIGHT TO BRING A WRONG-FUL DEATH ACTION IS A LEGAL INCIDENT OF THE PARENT–CHILD RELATIONSHIP THAT IS LOST UPON ADOPTION.

■ ¶ 9 An action for wrongful death is a creature of statute, and our decision in this case is controlled entirely by statute. A.R.S. § 12–612(A) provides:

> An action for wrongful death shall be brought by and in the name of the surviving husband or wife, child, parent or guardian, or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.

¶ 10 "In enacting the wrongful death statute ... the legislature explicitly recognized the legal right of the *survivors* to be compensated for their loss resulting from the victim's death." *Summerfield v.Super. Ct. (Riddel),* 144 Ariz. 467, 476, 698 P.2d 712, 721 (1985) (citations omitted).[2] Our supreme court has held that A.R.S. § 12–612(A) "differentiat[es] and discriminat[es] between categories" of persons. *Solomon v. Harman,* 107 Ariz. 426, 431, 489 P.2d 236, 241 (1971). The court noted that A.R.S. § 12–612(A) "separates those who possess the entirety of

parental rights and obligations from those who do not." *Id.*

¶ 11 By its plain language, the statute creates a limited class of beneficiaries who may sue. That class does not include several relationships that the law generally recognizes as sufficiently close to trigger rights of inheritance. For example, the statute does not grant siblings, grandparents or grand-children—each of whom might be expected to have enjoyed the closest of family relationships with the decedent in many cases—the right to bring a wrongful death action. Moreover, the statute contains no elastic category that would permit the court to evaluate the extent or quality of the familial relationship. We therefore conclude that the legislature intended that only those persons expressly identified in the statute would have standing to bring a wrongful death action.

¶ 12 Edonna, though an adult, is Edward's biological child. There is no statutory definition of the term "child" for purposes of the wrongful death act, and in the absence of other authority, we would conclude that Edonna was entitled to bring his claim. The adoption statutes, however, reveal a contrary legislative intent.

¶ 13 A.R.S. § 8–117 provides, in relevant part:

> B. On entry of the decree of adoption, the relationship of parent and child between the adopted child and the persons who were the child's parents before entry of the decree of adoption *is completely severed and all the legal rights, privileges, duties, obligations and other legal consequences of the relationship cease to exist, including the right of inheritance....*
> C. If the adoption is by the spouse of the child's parent, the relationship of the child to *that parent* remains unchanged by the decree of adoption.

(emphasis added).

¶ 14 It is difficult to conceive how the legislature could have expressed its intent more clearly or in more absolute terms. Upon adoption, the relationship between the

**2.** The wrongful death statute thereby creates a cause of action distinct from the survival statute, which "provides for recovery of damages sus-

tained by the deceased party from the time of accident until his death." *Barragan v. Super. Ct.,* 12 Ariz.App. 402, 404, 470 P.2d 722, 724 (1970).

child and his previous parents is "completely severed," and all "legal consequences" of the relationship cease to exist.[3] Accordingly, because the right to bring a wrongful death action is a "legal consequence" of the parent-child relationship (a right that by statute cannot exist without the relationship), that right is lost upon adoption. *See Holder v. Indus. Comm'n of Ariz.*, 125 Ariz. 366, 368, 609 P.2d 1066, 1069 (App.1980) (denying workmen's compensation death benefits to decedent's children because the "legal relationship from which benefits flow ... ceased to exist" pursuant to A.R.S. § 8–117 when children were adopted by stepfather before death of biological father).

## II. A.R.S. § 14–2114 DOES NOT APPLY TO WRONGFUL DEATH CLAIMS.

¶ 15 Edonna contends that the harsh effect of A.R.S. § 8–117(B) in these circumstances is undone by A.R.S. § 14–2114, which sets forth a special rule for inheritance after adoption by a stepparent. We disagree.

¶ 16 Section 14–2114 provides that "for the purposes of intestate succession":

> B. An adopted person is the child of that person's adopting parent or parents and not of the natural parents. *Adoption of a child by the spouse of either natural parent has no effect on the relationship between the child and that natural parent or on the right of the child or a descendant of the child to inherit from or through the other natural parent.*

(emphasis added).

¶ 17 First, we note that if this statute applied to wrongful death actions, the first sentence would actually undercut Edonna's position. By declaring affirmatively that an adopted person is not the child of the natural parents, the legislature left no doubt that a natural child is indeed divested of the legal status of a child by operation of the adoption—leading to the same conclusion that we reach under A.R.S. § 8–117.

¶ 18 Edonna relies heavily on the second sentence, which provides that a person who is adopted by a stepparent does not lose the right to inherit from either natural parent.[4] This reliance is misplaced, however, because the right to bring a wrongful death action does not depend on the right to inherit—it is a personal right to be compensated for one's own loss. *Summerfield*, 144 Ariz. at 476, 698 P.2d at 721.

¶ 19 If the inheritance statute worked to expand the class of persons entitled to pursue wrongful death actions, it is difficult to see where the expansion of standing would end. Edward was survived by three brothers, but their putative rights of inheritance surely would not create a right to sue for wrongful death. And to the extent Edonna argues that A.R.S. § 14–2114's specific expansion of inheritance rights beyond that contemplated by § 8–117 suggests a legislative intent to place children adopted by stepparents in a generally superior position to other adopted children, we disagree. When a specific provision in one statute supersedes a general provision in another, it does so only to the extent of its specific language. The court does not have license to rewrite a general law merely because the legislature has created a specific exception. And the right of adopted stepchildren to inherit from both natural parents does not render them "children" of those parents—the first sentence of § 14–2114(B) makes that clear.

3. We disagree with the trial court's conclusion that "other than the right to inherit, A.R.S. § 8–117(B) only extinguishes rights existing at the time of the severance." We can find neither legal authority nor logical support for the notion that the legislature would so thoroughly end the parent-child relationship at the moment of adoption, but freely allow other unnamed rights to spring into existence after adoption.

4. To the extent that A.R.S. § 14–2114(B) may conflict with § 8–117 by allowing inheritance through both natural parents, we note that the two statutes were harmonized in *In re Ryan*, 187 Ariz. 311, 314, 928 P.2d 735, 738 (App.1996). There, this court determined that the statutes "address in tandem different facets of adoption," specifically that § 8–117 addresses the non-severed biological parent and § 14–2114 "addresses the other biological parent." *Id.* We also note that § 8–117 was enacted in 1970, while § 14–2114 was enacted in 1994. "Generally, a more recent, specific statute governs over [an] older, more general statute." *Lavidas v. Smith*, 195 Ariz. 250, 253, ¶ 13, 987 P.2d 212, 215 (App. 1999).

¶ 20 To be sure, had there been no other surviving statutory beneficiaries, the personal representative of Edward's estate could have brought a wrongful death claim for the estate's benefit. *See* A.R.S. § 12–612(A); *Solomon*, 107 Ariz. at 430, 489 P.2d at 240 (finding that the estate may bring and benefit from a claim when none of the other beneficiaries named in A.R.S. § 12–612 survive). And under the intestacy statute, Edonna could have inherited from Edward's estate. A.R.S. § 14–2114(B). *See also Ryan*, 187 Ariz. at 314, 928 P.2d at 738 (allowing an adopted child to retain inheritance rights from both biological parents). Although it may seem incongruous that Edonna could inherit from the estate's wrongful death claim but be prohibited from bringing his own wrongful death claim, we note that the same result would apply to the claims of a host of other relatives.

¶ 21 Some jurisdictions do recognize a link between the right to bring a wrongful death action and an individual's status as an heir or ability to take under intestacy statutes. *See, e.g., Sluder v. Marple*, 134 S.W.3d 15 (Ky.Ct. App.2003); *Phraner v. Cote Mart Inc.*, 55 Cal.App.4th 166, 63 Cal.Rptr.2d 740 (1997); *In re Estate of Renaud*, 202 Mich.App. 588, 509 N.W.2d 858 (1993); *Wasley v. Brown*, 193 F.Supp. 55 (D.Va.1961). But in those cases, the statutory right to bring an action was "grounded in the right to inherit from decedents." *Phraner*, 63 Cal.Rptr.2d at 742.[5]

¶ 22 Finally, Edonna notes that our supreme court has not conclusively determined whether a wrongful death claim is purely statutory or whether it existed at common law. *See Summerfield*, 144 Ariz. at 470–73, 698 P.2d at 715–18 (concluding, "at a minimum, that statute and precedent have combined to produce a [wrongful death] cause of action with common law attributes"). In *Summerfield* the court sought to determine whether the definition of a person whose death was compensable under A.R.S. § 12–612 could be expanded to include a viable fetus. 144 Ariz. at 469–70, 698 P.2d at 714–15. Finding that it could, the court concluded that "common law principle and policy must play a role in the interpretation" of our wrongful death statute. *Id.* at 473–74, 698 P.2d at 718–19. But it also cautioned that "[s]pecial legislative intent may control where the action arises from statute, where the legislature's intent, purpose and policy are clearly expressed." *Id.* at 474, 698 P.2d at 719.

¶ 23 This case merits *Summerfield*'s caution, and prevents us from expanding the definition of "child" in A.R.S. § 12–612 as Edonna suggests. First, the cause of action arises from statute.[6] *See Halenar v.Super. Ct.*, 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972) ("There is, of course, no common law right of action for wrongful death."); *Solomon*, 107 Ariz. at 428, 489 P.2d at 238 ("The right of action for wrongful death is purely statutory. . . ."). And second, the legislature's intent, purpose and policy are clearly expressed in the all-encompassing language of A.R.S. § 8–117—which completely severs the parent-child relationship and extinguishes "all" rights and obligations flowing from it— and A.R.S. § 14–2114—which creates a parent-child relationship for the limited "purpose[ ] of intestate succession."

## CONCLUSION

¶ 24 For the foregoing reasons, we reverse the judgment against the Heckmans.

CONCURRING: PATRICK IRVINE, and MAURICE PORTLEY, Judges.

---

5. California's original wrongful death statute provided that the *"heirs"* of the decedent were allowed to "maintain an action." *Phraner*, 63 Cal.Rptr.2d at 741–42. In Arizona, however, the statutory authority to bring suit has always been vested in certain specified beneficiaries (i.e., spouse, children, parents or the decedent's estate). *See Hurt v.Super. Ct.*, 124 Ariz. 45, 49–50, 601 P.2d 1329, 1333–34 (1979). At one point, the *distribution* of wrongful death awards in Arizona was tied to intestate succession laws. *Id.* at 50, 601 P.2d at 1334. But since 1973, awards to beneficiaries have been made "in proportion to their damages." *Id.*

6. Although our supreme court did not come to this definitive conclusion, neither did it overrule earlier pronouncements of the statutory nature of the claim.