IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| DAMIAN ORLANDO ARANDA, a single man, | ) ) ) | 2 CA-CV 2006-0178 DEPARTMENT A |
| Plaintiff/Appellant, | ) ) | O P I N I O N |
| v. | ) ) | |
| DIEGO CARDENAS, M.D., and JANE DOE CARDENAS, husband and wife; NES ARIZONA INC., an Arizona corporation; MT. GRAHAM REGIONAL MEDICAL CENTER, INC., an Arizona corporation; JOGESWAR RATH, M.D., and JANE DOE RATH, husband and wife; and MEDICAL CENTER OF EASTERN ARIZONA, P.C., an Arizona corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF GRAHAM COUNTY

Cause No. C2005-003

Honorable Douglas Holt, Judge

REVERSED AND REMANDED

Jacoby & Meyers Law Offices
By Bonnie S. Dombrowski

Tucson
Attorneys for Plaintiff/Appellant

Carolyn Armer Holden and Scott A. Holden                                    Tempe
                                                        Attorneys for Defendants/
                                                          Appellees Cardenas


Smith Law Group
  By Christopher J. Smith and Eric J. Thomae                              Tucson
                                                Attorneys for Defendant/Appellee
                                                    Mt. Graham Regional Medical
                                                                     Center, Inc.


Slutes, Sakrison & Hill, P.C.
  By Tom Slutes                                                           Tucson
                                                Attorneys for Defendants/Appellees Rath
                                                     and Medical Center of Eastern
                                                                    Arizona, P.C.

---

H O W A R D, Presiding Judge.

¶1        In this wrongful death action, appellant Damian Aranda challenges the trial court's grant of summary judgment in favor of appellees Diego Cardenas, Jogeswar Rath, and Mt. Graham Regional Medical Center ("Mt. Graham").  He argues the trial court erred by applying the wrong legal standard for determining paternity in wrongful death cases and imposing the burden of proof on Aranda. He contends the evidence presented was sufficient to establish that he was the father of the unborn child that died.  Finding a genuine issue of material fact exists regarding Aranda's paternity, we reverse.

## Background

¶2        When reviewing a trial court's decision on a motion for summary judgment, we view the facts and all reasonable inferences from them in the light most favorable to the

nonmoving party. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998). In September 2003, Rachel Lopez sought treatment at Mt. Graham and was treated by Cardenas and Rath. She was pregnant at the time, and ultimately, both she and her unborn baby died. This action, on behalf of a number of statutory beneficiaries of both Lopez and the unborn child,[1] ensued in January 2005.

¶3        The defendants moved for summary judgment on Aranda's claim, arguing that he was not a statutory beneficiary of the unborn child because he could not prove his paternity of the child. Aranda argued there was sufficient evidence of his paternity to have a jury decide the issue. The trial court granted the motion. After denying Aranda's motion for reconsideration, the court entered judgment dismissing Aranda's claim. This appeal followed.

**Application of Paternity Statutes**

¶4        Aranda first contends the trial court erred in referring in its ruling to A.R.S. §§ 25-812 and 25-814 and in requiring deoxyribonucleic acid (DNA) tests. Aranda argues A.R.S. §§ 25-801 through 25-818 ("the paternity statutes") do not apply to paternity determinations in wrongful death cases and instead contends the issue should "be decided under the Arizona Rules of Evidence." Cardenas, Rath, and Mt. Graham, on the other hand, argue that the presumptions and other requirements in the paternity statutes should apply

---

[1]There does not appear to be any dispute that the unborn baby was a "person" under A.R.S. § 12-611. *See Summerfield v. Superior Court*, 144 Ariz. 467, 479, 698 P.2d 712, 724 (1985) (viable, stillborn fetus a "person" under wrongful death statute).

3

to a paternity dispute in a wrongful death case. We review the trial court's decision de novo. *See Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, ¶ 8, 144 P.3d 519, 523-24 (App. 2006) (propriety of summary judgment reviewed de novo); *see also Stein v. Sonus USA, Inc.*, 214 Ariz. 200, ¶ 3, 150 P.3d 773, 774 (App. 2007) (applicability of statute reviewed de novo).

**¶5** "In interpreting statutes, our central goal 'is to ascertain and give effect to the legislature's intent.'" *Yarbrough v. Montoya-Paez*, 214 Ariz. 1, ¶ 12, 147 P.3d 755, 759 (App. 2006), *quoting Washburn v. Pima County*, 206 Ariz. 571, ¶ 9, 81 P.3d 1030, 1034 (App. 2003). "'[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.'" *City of Sierra Vista v. Dir., Ariz. Dep't of Envtl. Quality*, 195 Ariz. 377, ¶ 10, 988 P.2d 162, 165 (App. 1999), *quoting Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). "When an ambiguity exists, however, we attempt to determine legislative intent by considering 'the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *Hourani v. Benson Hosp.*, 211 Ariz. 427, ¶ 7, 122 P.3d 6, 10 (App. 2005), *quoting Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

**¶6** Wrongful death actions are governed by statute. A.R.S. §§ 12-611 through 12-613 ("the wrongful death statutes"). Section 12-612(A) provides: "An action for wrongful death shall be brought by and in the name of the surviving husband or wife, child, parent or guardian, or personal representative of the deceased person for and on behalf of

4

the surviving husband or wife, children or parents." But the wrongful death statutes do not specify a procedure or standard of proof for proving paternity when the parties dispute it.

¶7 The paternity statutes prescribe the procedure and standards for proving paternity in a paternity proceeding. Section 25-814 lists four situations in which a man is presumed to be the father of a child. Those presumptions may only be overcome by clear and convincing evidence. § 25-814(C). Additionally, § 25-807(C) provides that "[t]he court, on its own motion or on motion of any party to the proceedings, shall order the mother, her child or her children and the alleged father to submit to the drawing of blood samples or the taking of [DNA] probe samples, or both." If the results of this testing

> indicate that the likelihood of the alleged father's paternity is ninety-five percent or greater, the alleged father is presumed to be the parent of the child and the party opposing the establishment of the alleged father's paternity shall establish by clear and convincing evidence that the alleged father is not the father of the child.

§ 25-807(D). The statutes also provide a method for a man to voluntarily acknowledge paternity, § 25-812, as well as a default determination of paternity where an alleged father does not appear or respond or does not submit to genetic testing as ordered. *See* § 25-813.

¶8 The wrongful death statutes do not mention the paternity statutes or prescribe a standard or procedure for proving paternity. Neither do the paternity statutes state that they apply to wrongful death proceedings or even to all cases in which paternity is in dispute. Based on the statutory language alone, we cannot determine whether the legislature intended to apply the standards in the paternity statutes to paternity determinations in

5

wrongful death cases. Accordingly, we must look to "'context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *Hourani*, 211 Ariz. 427, ¶ 7, 122 P.3d at 10, *quoting Zamora*, 185 Ariz. at 275, 915 P.2d at 1230.

**¶9**        The context of the statutes provides some initial guidance. The paternity statutes appear in title 25, chapter 6, article 1. Both chapter 6 and article 1 are entitled "Maternity and Paternity Proceedings." These titles suggest the legislature intended statutes contained therein to relate specifically to maternity and paternity proceedings. *See Pleak v. Entrada Prop. Owners' Ass'n*, 205 Ariz. 471, ¶ 7, 73 P.3d 602, 605 (App. 2003) ("[A]lthough title and section headings of statutes are not law, we may look to them for guidance."), *aff'd*, 207 Ariz. 418, 87 P.3d 831 (2004); *Cochise County v. Borowiec*, 162 Ariz. 192, 195, 781 P.2d 1379, 1382 (App. 1989) (construction of venue provisions "aided by a review of the article headings"). And the language of the paternity statutes suggests they are specific to those proceedings. *See, e.g.*, §§ 25-801 (jurisdiction in maternity and paternity proceedings); 25-802 (venue in maternity and paternity proceedings); 25-803 (parties who may institute paternity proceedings); 25-806 (procedures for instituting maternity or paternity proceedings); 25-807(A) (precedence of maternity and paternity proceedings); 25-809(A) (judgment shall include support obligation). The wrongful death statutes appear in title 12 and include no reference to the standards in the paternity statutes.

**¶10**        In addition to occupying different portions of the code, the wrongful death statutes and the paternity statutes serve different purposes. In *Hurt v. Superior Court*, 124

6

Ariz. 45, 601 P.2d 1329 (1979), our supreme court declined to require a separate paternity proceeding to establish paternity in a wrongful death action. *Id.* at 48-49, 601 P.2d at 1332-33. In doing so, it noted that the purpose of the paternity statutes "appear[ed] to be to provide financial support for the child from the natural parent." *Id.* at 48, 601 P.2d at 1332; *see also Hall v. Lalli*, 194 Ariz. 54, ¶¶ 13-14, 977 P.2d 776, 780-81 (1999) (discussing child's and state's interests in paternity determination); *Hoyle v. Superior Court*, 161 Ariz. 224, 227, 778 P.2d 259, 262 (App. 1989) ("Historically, the purpose of a paternity action was to prove that the defendant was the child's father so that he could be required to contribute to the child's support.").

¶11        The purpose of the wrongful death statutes, however, is to provide procedures for compensating survivors for the loss of the deceased. *See Summerfield v. Superior Court*, 144 Ariz. 467, 476, 698 P.2d 712, 721 (1985) ("In enacting the wrongful death statute in 1887, and in returning to its terms under the present statute, the legislature explicitly recognized the legal right of the *survivors* to be compensated for *their loss* resulting from the victim's death."); *Katz v. Filandro*, 153 Ariz. 601, 604, 739 P.2d 822, 825 (App. 1987) (noting "legislative intent to allow full recovery for survivors"). The different purposes of the statutes suggest no legislative intent that the paternity statutes apply to paternity determinations in wrongful death cases.

¶12        We note also that the paternity statutes would not have permitted any of the defendants in this action to be parties to a paternity proceeding. *See* § 25-803(A) (listing

7

who may bring paternity action); *Hurt*, 124 Ariz. at 48, 601 P.2d at 1332 (noting wrongful death defendant would be "an outsider" in paternity proceeding). Thus, in relying heavily on the genetic testing requirements of § 25-807, Cardenas is attempting to take advantage of provisions he could not invoke were this a paternity proceeding. *See Antonsen v. Superior Court*, 186 Ariz. 1, 7, 918 P.2d 203, 209 (App. 1996) ("[T]he legislature, by definitively narrowing the category of who can be a 'party' to a paternity proceeding, has thereby implicitly determined who has 'good cause' to request mandatory paternity testing pursuant to A.R.S. section 12-847(C) [now § 25-807(C)]."). We cannot conclude that the legislature intended to allow a party who would be a stranger to a paternity proceeding, and thus unable to request mandatory paternity testing, *see Antonsen*, 186 Ariz. at 7, 918 P.2d at 209, to rely on the paternity testing requirement in a wrongful death action where paternity is at issue.

¶13    Additionally, the situation in this case demonstrates the practical problems that would arise from incorporating the requirements of the paternity statutes into the wrongful death context. Paternity proceedings "may be instituted during the pregnancy of the mother or after the birth of the child." § 25-804. Given Aranda's assertion that both he and Lopez publicly acknowledged his paternity before Lopez's death, Aranda would have had no reason to seek a paternity determination during the pregnancy. And, because Lopez died before giving birth, Aranda could not have sought a paternity determination after the birth of the child.

¶14 The Texas Supreme Court considered a similar issue and reached a similar result. In *Garza v. Maverick Market, Inc.*, 768 S.W.2d 273, 274-75 (Tex. 1989), the court considered whether an illegitimate, posthumous child had standing to file a wrongful death action for the death of his alleged father. The court held that the child did not have to comply with statutes in Texas's Family Code in order to prove paternity. *Id.* at 275. The court reasoned as follows:

> The two bodies of law are simply too disparate in application for such combination. The obvious purpose of chapter 13 of the Family Code is to protect the rights of mothers and putative fathers, and to serve the best interest of the child. The text of that chapter shows that it was neither designed or even intended to address tort actions; nor was it designed to protect tortfeasors. The equally obvious purpose of the Wrongful Death Act, on the other hand, is to provide a means whereby surviving spouses, children, and parents can recover for the loss of a family member by wrongful death. Absent any indication by the legislature that it intended the legitimation provisions of the Family Code to apply to the Wrongful Death Act, we will not make that application ourselves.

*Id.* The court concluded that the determination of paternity in a wrongful death suit is a factual question to be decided by a fact-finder in each case. *Id.* at 275-76.

¶15 We find the reasoning of *Garza* persuasive. As in Texas, our wrongful death statutes and paternity statutes differ markedly, not only in their language, but in their respective contexts and purposes. We decline to apply the requirements of the paternity statutes in a wrongful death proceeding where the legislature has not explicitly done so. Thus, we necessarily reject the defendants' argument that, in the absence of a DNA test or

9

other presumption of paternity, Aranda cannot prove his paternity.[2] And, although the trial court only stated that the paternity statutes "provide[d] guidance," it relied heavily on the absence of the types of proof acceptable in paternity actions in granting the defendants' motion and in so doing applied an incorrect standard in deciding the motion for summary judgment.

**Burden of Proof**

¶16 Aranda next argues the trial court erred in imposing upon him the burden of proving his paternity.[3] He contends that lack of capacity to sue is an affirmative defense that the defendants bear the burden of proving. When reviewing a trial court's grant of summary judgment, "we must determine *de novo* . . . whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998); *see also Am. Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, ¶ 8, 93 P.3d 507, 509 (2004) (the appropriate burden of proof is an issue of law reviewed de novo).

---

[2]Because we conclude that the paternity statutes do not govern here, we do not decide whether the defendants accurately interpret those statutes.

[3]Cardenas and Mt. Graham contend that Aranda waived this issue by failing to raise it below. *See Schurgin v. AMFAC Elec. Distrib. Corp.*, 182 Ariz. 187, 190, 894 P.2d 730, 733 (App. 1995) (issues raised for first time on appeal are waived). But, in Aranda's motion for reconsideration, he argued that the defendants had failed to prove he was not the unborn child's father. And the transcript of the hearing on the motion for summary judgment demonstrates that the issue was before the court. In fact, it was Cardenas's counsel who stated: "[P]laintiffs' position now and the position in their response is that it is the defendants' responsibility to prove that [Aranda] is not the father of this fetus." We find the issue was sufficiently raised and is not waived.

¶17    In *Hurt v. Superior Court*, 124 Ariz. 45, 49, 601 P.2d 1329, 1333 (1979), our supreme court concluded that a separate paternity action is not necessary to establish paternity in a wrongful death case. Rather, the trial court can determine paternity "at a pretrial hearing on the issue of the plaintiff's capacity to sue properly raised by the pleadings." *Id.* "When a party desires to raise an issue as to . . . the capacity of any party to sue . . . , the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Ariz. R. Civ. P. 9(a), 16 A.R.S., Pt. 1.

¶18    Although the supreme court in *Hurt* established the procedure for raising the issue of paternity in wrongful death cases, it did not state who bore the burden of proving paternity. Based on the wrongful death statutes and *In re Cassidy's Estate*, 77 Ariz. 288, 270 P.2d 1079 (1954), we conclude that Aranda bears the burden of proving his paternity.

¶19    Section 12-612(A), A.R.S., provides:

> An action for wrongful death shall be brought by and in the name of the surviving husband or wife, child, parent or guardian, or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.

"'The right of action for wrongful death is purely statutory and the action must be brought in the names of the persons to whom the right is given by statute.'" *Knauss v. DND Neffson Co.*, 192 Ariz. 192, 199, 963 P.2d 271, 278 (App. 1997), *quoting Solomon v. Harman*, 107 Ariz. 426, 428, 489 P.2d 236, 238 (1971). In a wrongful death action, damages are awarded

11

to the statutory plaintiffs for their respective damage. A.R.S. § 12-613. The action is subject to defenses that the defendant could have raised against the deceased. *Gibson v. Boyle*, 139 Ariz. 512, 515, 679 P.2d 535, 538 (App. 1983).

¶20 "Generally, when a statute grants a right or benefit, a court looks first to the statute to determine whether the legislative body has allocated the burden of proving entitlement to the right or benefit." *Harvest v. Craig*, 195 Ariz. 521, ¶ 14, 990 P.2d 1080, 1083 (App. 1999). The language of § 12-612 suggests that proof that the plaintiff is a statutory plaintiff is an element of the plaintiff's case, even though the statute does not specifically allocate the burden of proof. And, "it is generally held that a party seeking a right or benefit under a statute bears the burden of proving that he comes within the ambit of the statute." *Harvest*, 195 Ariz. 521, ¶ 15, 990 P.2d at 1083. Furthermore, lack of capacity to sue is not a defense that could have been raised against the decedent. *See Gibson*, 139 Ariz. at 515, 679 P.2d at 538. Therefore, the wrongful death statutes support imposing the burden of proof on the plaintiff.

¶21 Additionally, the only supreme court case to impose the burden of proving capacity to sue suggests the burden falls on the plaintiff. In *Cassidy's Estate*, Ellen Cassidy, a beneficiary of $4,000 under her brother Joseph Cassidy's will, later petitioned to revoke probate of the will, alleging fraud. 77 Ariz. at 290-91, 270 P.2d at 1080-81. On appeal from dismissal of that action, our supreme court addressed, among other issues, whether Ellen had capacity to bring the action, given that she had received $4,000 under the will,

12

which contained a clause forfeiting the bequest of anyone challenging the will. *Id.* at 298, 270 P.2d at 1085-86. Interpreting Rule 9(a), Ariz. R. Civ. P., the court stated: "It . . . appears that the capacity to sue need not be averred, but when challenged it must be proved." 77 Ariz. at 299, 270 P.2d at 1086. The court remanded the case to provide Ellen the opportunity to return the $4,000, which, the court stated, would permit her to "show[] her capacity" to proceed. *Id.*

**¶22**    *Cassidy's Estate* supports the proposition that, although a plaintiff need not allege the capacity to sue, once the defendant raises the issue, the plaintiff bears the burden of proof. But, in that case, there did not appear to be any factual dispute to resolve: if, on remand, Ellen returned the money, she would have capacity to proceed. Thus, it is not clear the supreme court was presented with, analyzed, and decided who bore the burden of proving capacity on remand as opposed to stating the obvious factual situation. *See State v. Kelly*, 210 Ariz. 460, ¶ 5, 112 P.3d 682, 684 (App. 2005) (prior opinion not binding precedent on issue not squarely presented for decision); *Mohave County v. City of Kingman*, 158 Ariz. 172, 176, 761 P.2d 1076, 1080 (App. 1988) (same), *aff'd*, 160 Ariz. 502, 774 P.2d 806 (1989); *cf. Creach v. Angulo*, 189 Ariz. 212, 214, 941 P.2d 224, 226 (1997) (supreme court's statement in prior case that error was "reversible" was dictum where it would have been sufficient "[t]o have found mere 'error'"). Nonetheless, we find *Cassidy's Estate* persuasive.

13

¶23 Authority from other jurisdictions and secondary sources lends additional support. *See FDIC v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (although Rule 9(a) requires defendant to plead capacity to sue, "plaintiff retains the burden of proof"); *Berg v. Bridle Path Homeowners Ass'n*, 809 So. 2d 32, 34 (Fla. Dist. Ct. App. 2002) (requirement that defendant raise issue by specific negative averment "does not relieve the plaintiff from having to prove every element of its entitlement to a judgment against the defendant once the defendant makes a specific denial of a particular element of the claim"); *Mackey v. Burke*, 694 P.2d 1359, 1363 (N.M. Ct. App. 1984) ("Rule 9(a) . . . does not excuse a plaintiff who lacks capacity; once capacity is challenged, a plaintiff must show capacity."), *overruled on other grounds by Chavez v. Regents of Univ. of N.M.*, 711 P.2d 883 (N.M. 1985); *see also* 2 Daniel J. McAuliffe & Shirley J. Wahl, *Arizona Civil Trial Practice* § 10.1, at 211 (2d ed. 2001) ("Once the defense is timely raised, the party claiming capacity, authority, or legal existence has the burden of proof on that issue."); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1294, at 569 (2d ed. 1990) ("Although Rule 9(a) gives a denial of capacity some of the attributes of an affirmative defense, it should not be so classified.").[4]

_____

[4]We note that there is some authority to the contrary, imposing the burden on the party raising the issue of capacity to sue. *See, e.g., Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 894-95 (Md. Ct. Spec. App. 1984); *Dixie Dinettes, Inc. v. Schaller's Furniture, Inc.*, 335 N.Y.S.2d 632, 635 (Civ. Ct. 1972) ("[W]here the defendant seeks to impugn the plaintiff's capacity to sue, the burden of proof is placed upon him to establish such defense with appropriate proof."). But this position is inconsistent with our wrongful death statutes, and we decline to adopt it.

¶24 Furthermore, when allocating the burden of proof, we may consider which party will usually be best situated to carry it. *Cf. State v. Grell*, 212 Ariz. 516, ¶ 27, 135 P.3d 696, 702 (2006) ("not inappropriate" to put burden on defendant who has access to information), *cert. denied*, ___ S. Ct. ___, 2007 WL 1387958 (May 14, 2007); *Ohliger v. Carondelet St. Mary's Hosp. & Health Center*, 173 Ariz. 597, 598, 845 P.2d 523, 524 (App. 1992) ("The burden of establishing the propriety of the fee must be on the attorney because he will have the best access to the information necessary to assist the court."). Here, whether the plaintiff is a statutory beneficiary depends on the relationship of the plaintiff to the decedent. The plaintiff should have the best access to the information establishing that relationship. The defendant, on the other hand, is typically a stranger to the relationship who has caused the death of the decedent and may not have any knowledge of the relationship or lack thereof.

¶25 We acknowledge that language in other Arizona cases suggests that the lack of capacity to sue is an affirmative defense. *See Baxter v. Harrison*, 83 Ariz. 354, 356, 321 P.2d 1019, 1021 (1958) ("The *defense* or objection of lack of plaintiffs' capacity to sue is waived unless presented either by a motion, or, if no motion is made, in the answer or reply.") (emphasis added); *Trico Elec. Coop. v. Ralston*, 67 Ariz. 358, 368, 196 P.2d 470, 476 (1948) ("If th[e] issue [of capacity to sue] is not raised by motion before the answer is filed, it must be set forth in the answer as an *affirmative defense*.") (emphasis added); *see also Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 186, 800 P.2d 1291, 1294 (App.

15

1990) (calling capacity to sue issue in *Baxter* "affirmative defense" in reciting *Baxter*'s procedural background); *Gonzales v. Ariz. Pub. Serv. Co.*, 161 Ariz. 84, 88, 775 P.2d 1148, 1152 (App. 1989) (rejecting suggestion that lack of capacity to sue constitutes failure to state claim); *Ballard v. Lawyers Title of Ariz.*, 27 Ariz. App. 168, 169-70, 552 P.2d 455, 456-57 (1976); *Salinas v. Kahn*, 2 Ariz. App. 181, 186, 407 P.2d 120, 125 (1965).

¶26     These cases appear to support Aranda's position because the party raising an affirmative defense ordinarily bears the burden of proving it.  *See Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, ¶ 21, 138 P.3d 1210, 1216 (App. 2006). But the above cases all involved whether the defendant's failure to raise the issue resulted in a waiver of it.  None of them addressed the burden of proof.  Thus, to the extent language in those decisions suggests lack of capacity to sue is an affirmative defense, it is dicta.  *See Ariz. Corp. Comm'n v. Mountain States Tel. & Tel. Co.*, 71 Ariz. 404, 412, 228 P.2d 749, 754 (1951) ("dictum" is "language . . . unnecessary to sustain the judgment of the court").

¶27     More importantly, our decision today is consistent with the results of these cases.  If a defendant fails to raise the issue of capacity to sue, it is waived.  *Baxter*, 83 Ariz. at 356, 321 P.2d at 1021.  And failing to allege capacity to sue does not constitute the failure to state a claim upon which relief may be granted.  *Gonzales*, 161 Ariz. at 88, 775 P.2d at 1152.  Further, the issue can still be determined prior to trial, no matter who bears the burden of proof.  *See Hurt*, 124 Ariz. at 49, 601 P.2d at 1333 (paternity in wrongful death case "can be determined at a pretrial hearing on the issue of the plaintiff's capacity to

16

sue"); *Salinas*, 2 Ariz. App. at 186, 407 P.2d at 125 (capacity to sue "should be raised prior to trial").

¶28 Although we acknowledge the authority suggesting lack of capacity to sue is an affirmative defense, placing the burden on the plaintiff once the defendant raises the issue is consistent with the wrongful death statutes, the access of the parties to the necessary information, and dicta in *Cassidy's Estate.* Accordingly, we hold that, when the issue is properly raised, the plaintiff bears the burden of proving the capacity to sue. The trial court therefore did not err in placing the burden of proof on Aranda.

**Genuine Issue of Material Fact**

¶29 We now address whether a genuine issue of material fact exists regarding Aranda's paternity. Capacity to sue is generally a question of law for the court. *See Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 499, 917 P.2d 222, 228 (1996) (corporation's capacity to sue question of law). But Aranda's capacity to sue depends on whether he is in fact the father of the unborn child. This is a factual question. *See Garza v. Maverick Mkt., Inc.*, 768 S.W.2d 273, 275-76 (Tex. 1989). Accordingly, if there is a genuine dispute of material fact regarding whether he is the father, summary judgment was inappropriate. *See* Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; *cf. Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 140, 927 P.2d 796, 800 (App. 1996) (whether parties were of unsound mind, which would have tolled statute of limitations, was factual question for jury).

17

We determine de novo whether a genuine issue of material fact exists. *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998).

¶30    Summary judgment is appropriate "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). A trial court should grant summary judgment where "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Although the court must consider the applicable burden of proof, *see id.* at 308-09, 802 P.2d at 1007-08, the fact-finder determines credibility, weighs the evidence, and draws appropriate inferences from the evidence, *Allstate Indemnity Co. v. Ridgely*, 214 Ariz. 440, ¶ 19, 153 P.3d 1069, 1073 (App. 2007).

¶31    Cardenas, Rath, and Mt. Graham presented the following evidence in support of their motion for summary judgment: (1) at the time of the unborn child's conception, Aranda was married to another woman, with whom he had fathered two children; (2) he and Lopez were never married; (3) during questioning by police after being arrested in 2002, Lopez referred to Aranda as her former boyfriend; (4) a certificate from the Arizona Office of Vital Records showed there was no death record for a "Baby Lopez-Aranda"; (5) Rath

18

did not have the unborn child tested to see who was its father; and (6) there was no genetic testing to prove Aranda's paternity. None of this evidence proves as a matter of law that Aranda was not the father of the child.

¶32 Aranda presented the following evidence in opposing the motion: (1) an affidavit of Lopez's mother, Minnie Lopez, stating that Lopez told family and friends that Aranda was the father and that Lopez did not date or have intimate relations with anyone but Aranda "during the period of possible conception"; (2) his deposition, in which he testified that he was the father and that he and Lopez had been dating, they had lived together, and he had taken her to the hospital several days before she died; (3) a medical history signed by Lopez listing Aranda as the child's father and listing Lopez's last menstrual period as March 17, 2003; (4) a portion of Rath's deposition testimony stating that a staff member would have put Aranda's name in the "father" blank on the medical history based on what Lopez said; (5) a medical history of a prior pregnancy, which ended in February 2003 in a miscarriage, listing Aranda as the fetus's father.

¶33 Cardenas and Mt. Graham argue that it is inappropriate to consider the evidence Aranda presented because it is self-serving, conclusory, and largely based on hearsay. Rule 56(e), Ariz. R. Civ. P., requires that a party responding to a motion for summary judgment must, "by affidavits or as otherwise provided in this rule, . . . set forth specific facts showing that there is a genuine issue for trial." Affidavits must be "made on personal knowledge" and "set forth such facts as would be admissible in evidence." *Id.*

19

¶34 Aranda's deposition indicates that, at trial, he would testify he was dating Lopez, they had lived together for some period of time, and he was the one who took her to the hospital.[5] These facts appear to be based on his personal knowledge, *see* Rule 602, Ariz. R. Evid., 17A A.R.S., and, if he testified in court, would present no hearsay problem, *see* Rule 801(c), Ariz. R. Evid., 17A A.R.S. ("'Hearsay' is a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted.") (emphasis added). This evidence would be at least marginally relevant because it tends to prove that Aranda acted as a father would and was involved in a relationship with Lopez around the time she conceived. *See* Ariz. R. Evid. 401, 17A A.R.S. ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). And the fact that his testimony might be self-serving, which the trial court noted in its ruling, would not, alone, bar it. It would instead be a matter of credibility for the fact-finder to determine. *See Ridgely*, 214 Ariz. 440, ¶ 19, 153 P.3d at 1073.

---

[5]We are perplexed by Aranda's failure to avow that he had sexual intercourse with Lopez during the relevant time period. But it is a reasonable inference from his sworn claims that he dated and intermittently lived with Lopez and is the father of the child. We view all reasonable inferences in his favor, as the party opposing summary judgment. *See Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003).

¶35    Cardenas and Mt. Graham also contend Lopez's statement that Aranda was the father, contained in a medical history signed by Lopez, constitutes inadmissible hearsay.[6] Cardenas further contends that the statement lacks foundation because Lopez could not have known Aranda was the father. Aranda argues the statement falls under several hearsay exceptions.

¶36    We find one hearsay exception dispositive. Rule 804(b)(4), Ariz. R. Evid., 17A A.R.S., provides that the following is not hearsay if the declarant is unavailable to testify:

> (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood . . . .

Because Lopez is deceased, she is unavailable to testify. *See* Ariz. R. Evid. 804(a)(4). And the statement regarding Aranda's paternity falls under Rule 804(b)(4) because it concerns the birth of Lopez's child. *Cf. United States v. Carvalho*, 742 F.2d 146, 151 (4th Cir. 1984) (under identical federal rule, "relevant issues" include "details of one's ancestry"); *People v. Raffaelli*, 701 P.2d 881, 884 (Colo. Ct. App. 1985) (under identical Colorado rule, where baby had died and mother unavailable, "the fact that the baby died, the dates of her death and birth, and parentage are admissible under th[e] [family history] exception").

_____

[6] They do not appear to contend that the medical record itself is inadmissible hearsay.

21

Cardenas's contention that the statement lacks foundation is inapposite because the rule expressly provides that such statements are admissible "even though the declarant had no means of acquiring personal knowledge of the matter stated." Ariz. R. Evid. 804(b)(4).

¶37        Similarly, Minnie Lopez's affidavit avows that Rachel Lopez told Minnie "and other family and friends that she was having a baby with . . . Aranda." These statements concern the baby's parentage and, for the reasons discussed above, fall under the family history hearsay exception in Rule 804(b)(4).

¶38        Viewed in the light most favorable to Aranda, *see Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998), reasonable minds could differ on the issue of his paternity. Accordingly, a genuine issue of material fact exists, and thus the trial court erred in granting summary judgment.

## Conclusion

¶39        For the foregoing reasons, we reverse the trial court's judgment and remand the case for further proceedings consistent with this decision.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
GARYE L. VÁSQUEZ, Judge

22

_____
PETER J. ECKERSTROM, Judge