IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

PATRICK MCGOVERN, Deceased,
*Plaintiff/Appellee*,

*v.*

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM
ADMINISTRATION, an Agency of the State of Arizona; THOMAS J.
BETLACH, in his capacity as Director of AHCCCS,
*Defendants/Appellants*.

No. 1 CA-CV 15-0643
FILED 11-8-2016

———————————————

Appeal from the Superior Court in Maricopa County
No. LC2014-000540-001

The Honorable Crane McClennen, Judge, Retired

**REVERSED**

———————————————

COUNSEL

Jackson White PC, Mesa
By Richard Tyler White
*Counsel for Plaintiff/Appellee*

Johnston Law Offices PLC, Phoenix
By Logan T. Johnston, III
*Counsel for Defendants/Appellants*

## OPINION

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Chief Judge Michael J. Brown joined.

**T H O M P S O N**, Judge:

¶1        The Arizona Health Care Cost Containment System (AHCCCS) appeals from a final judgment overturning its director's decision denying Patrick McGovern's application for Medicaid benefits. We reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

¶2        AHCCCS denied McGovern's application for Medicaid benefits under its long-term care program, the Arizona Long-Term Care System (ALTCS), finding McGovern's "countable" income and "countable" resources exceeded the qualifying limits. McGovern appealed the decision, arguing that certain assets were "unavailable" because he was unable to access them.[1]

¶3        The denial turned on whether McGovern's three Bank of America (BOA) accounts, owned jointly with his daughter, and a Ford Focus he owned, but that was in his daughter's possession and titled in both their names were properly counted as resources. McGovern's monthly pension was deposited in one of the three bank accounts. McGovern's sister held a power of attorney to access his assets because McGovern lacked mental capacity to control them.

¶4        Under BOA's policy, co-owners of a bank account each may exercise control over the account without the consent of the other, but both account owners must sign a "Joint Owner Acknowledgement" to allow a third-party to access the account using a power of attorney. Under the policy, even though McGovern lacked capacity to exercise control over his BOA accounts, the bank would not permit McGovern's sister to exercise his power of attorney to access his accounts without the signed consent of McGovern's daughter. McGovern's daughter refused to consent.

---

[1]        McGovern died during the pendency of AHCCCS's decision-making before the administrative hearing.

**¶5**        An administrative law judge (ALJ) recommended McGovern's appeal be denied, reasoning that while there were practical impediments to accessing the resources, the applicable regulations do not disallow resources subject to institutional or lack of cooperation impediments, and the resources were otherwise *legally available*. The Director of AHCCCS issued a decision adopting the ALJ's recommendation and AHCCCS's argument that McGovern's position would encourage fraudulent collusion by joint owners to render assets "unavailable."

**¶6**        McGovern's representatives timely appealed the AHCCCS Director's decision to the superior court. There, McGovern's attorneys argued the Director's decision was arbitrary and capricious, contrary to law, and unreasonable. After briefing and oral argument, without explanation, the court adopted McGovern's arguments and authorities and reversed the Director's decision. The court also ordered AHCCCS to pay McGovern's nursing home for his care from the date of his AHCCCS application until he died, and his requested attorneys' fees and costs. AHCCCS timely appealed to this court. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) § 12-913 (2016).[2]

## DISCUSSION

**¶7**        On appeal to this court, McGovern's representatives reiterate his argument that the AHCCCS Director wrongly counted inaccessible assets as "available" resources. The dispositive issue is whether McGovern had a *legal right* to the bank accounts (including his pension deposited in one of those accounts), and the Ford Focus, not whether as a practical matter he would have difficulty accessing these assets. We reverse the trial court's decision and affirm the AHCCCS Director's ruling.

**¶8**        In an appeal of this administrative decision, both the trial court and this court reach the same underlying issues: whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion. *Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 220-21, ¶¶ 14, 19, 84 P.3d 482, 485-86 (App. 2004). "The [AHCCCS] Director's decision is the final administrative decision entitled to deference." *Id.* at 220, ¶ 15, 84 P.3d at 485 (citing A.R.S. § 41-1092.08(B) (2003)). We are bound to accept the administrative agency's factual findings that are supported by reasonable evidence. *Whiteco Outdoor Adver. v. City of Tucson*, 193 Ariz. 314, 317, ¶ 7, 972 P.2d 647, 650 (App. 1998) (citation omitted). On review, we

_____

[2]        Absent material changes from the relevant date, we cite a statute's current version.

determine whether the record contains substantial evidence to support the judgment. *Ethridge v. Ariz. St. Bd. of Nursing*, 165 Ariz. 97, 100, 796 P.2d 899, 902 (App. 1989). We review de novo any legal issues addressed by the administrative agency or the trial court. *Eaton v. Ariz. Health Care Cost Containment Sys.*, 206 Ariz. 430, 432, 79 P.3d 1044, 1046 (App. 2003).

**¶9**      In determining eligibility for long term care, "Arizona is bound by federal eligibility factors." *Smith*, 207 Ariz. at 221, ¶ 21, 84 P.3d at 486 (citing 42 U.S.C. § 1396a(a)(17)(B); A.R.S. §§ 36-2931(5)(d) (2003), -2934(A)(1) (2003)).[3] Eligibility hinges on the amount of "such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of the Department of Health and Human Services], available to the applicant . . . ." 42 U.S.C. § 1396a(a)(17)(B). The relevant federal regulation defines "resources" as:

> [C]ash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.
>
> (1) If the individual *has the right*, *authority or power* to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resources of the individual (or spouse).

20 C.F.R. § 416.1201(a)(1) (2010) (emphasis added).

**¶10**     The inquiry under this regulation focuses on an individual's legal right to income or a resource. *See Smith*, 207 Ariz. at 221, ¶ 22, 84 P.3d at 486 (holding "the determining factor [as to whether a resource is countable for Medicaid benefits eligibility] is the existence of the *legal right to liquidate or control* either the liquid or illiquid resource") (emphasis added).[4] The text of 20 C.F.R. § 416.1202(a)(1) focuses on an individual's

---

[3]      *See also Markva v. Haveman*, 317 F.3d 547, 550 (6th Cir. 2003) (stating that "in order for a state to receive federal [Medicaid] assistance, its plan must meet the requirements of the Social Security Act and the regulations promulgated by the Secretary of Health and Human Services").

[4]      "Both liquid and illiquid resources are counted in the resource assessment." *Smith*, 207 Ariz. at 221, ¶ 22, 84 P.3d at 486. The only difference between the two is that liquid resources are "cash or other

right, authority, and power over a resource; under that provision, any practical inconvenience or accessibility difficulties are not relevant to determining whether assets are to be counted. *See Chalmers v. Shalala*, 23 F.3d 752, 756 (3d Cir. 1994) (rejecting the notion that an individual's right to a resource pursuant to the regulation is dependent upon the difficulty, legal expense, or convenience of exercising his or her legal right to it). McGovern's representatives requested that AHCCCS provide a conservator to access McGovern's bank accounts[5], thereby implicitly conceding that, as co-owner of the bank accounts, he had the legal authority to liquidate them despite his daughter's refusal to consent. Further, as the owner of the Ford Focus, he undoubtedly also had the legal right to liquidate it. These assets are thus countable resources under the applicable regulation.

¶11 We additionally hold McGovern's assets were "available" to him even though he lacked the mental capacity to exercise his power to liquidate them and would have needed to obtain a conservator to access the assets, particularly the bank accounts, on his behalf. *See Frerks v. Shalala*, 52 F.3d 412, 414 (2d Cir. 1995) (finding trust funds "available" to supplemental security income benefits applicant, even though the applicant required a court order to obtain them); *Blaylock v. Harris*, 531 F. Supp. 24, 26 (W.D. Mo. 1981) (concluding a retirement account was property similar to a savings account and was an "available" "liquid" resource pursuant to 20 C.F.R. § 416.1202(a) and (b) because plaintiff was "presently *entitled*" to convert it to cash to use for support and maintenance) (emphasis added).

¶12 *Smith* is consistent with our holding on the "availability" issue. The key issue in *Smith* was whether to count proceeds of an insurance settlement from a car accident that injured the ALTCS applicant as an "available" resource as of the date of the accident. There, we stated "income and resources are *considered available* both when actually available and *when the applicant or recipient has the legal ability* to make such sum available for support and maintenance." *Smith*, 207 Ariz. at 222, ¶ 24, 84 P.3d at 487

---

property which can be converted to cash within twenty days," while illiquid resources are those which cannot be converted to cash within 20 days. 20 C.F.R. § 416.1201(b)–(c).

[5] McGovern did not argue before the superior court, and does not argue on appeal, that AHCCCS is required to assist applicants in asserting control of their own assets.

(emphasis added).[6] Ultimately, we held the unpaid insurance proceeds were "unavailable" to the plaintiff as of the date of the accident because the "proceeds were not [then] available to convert to cash." *Id.* at 222, ¶ 25, 84 P.3d at 487. The *Smith* plaintiff did not have a present right to use the "future," "not yet exist[ing]" proceeds or the right to force the insurer to pay any specific sum from those proceeds as of AHCCCS's resource assessment date. *See id.* at 222-23, ¶¶ 24-29, 84 P.3d at 487-88. In contrast, McGovern's representatives' concession that a conservatorship could have been obtained to access the bank accounts on McGovern's behalf implicitly acknowledges McGovern's ability to force payment from the account through the power retained by the conservator. The same conservator could have acquired the proceeds from sale of the vehicle. We therefore agree with AHCCCS that the assets were "available" to McGovern through a conservatorship.

¶13        Furthermore, the Social Security Administration's (SSA) Program Operations Manual System (POMS)[7] contemplates the use of

---

[6]        Contrary to this expressed holding, McGovern's representatives posit that *Smith* stands for the proposition that an asset is not available if an applicant lacks "immediate access" to it. But in *Smith*, the funds at issue were non-existent as of the date of the resource determination. *See* 207 Ariz. at 223, ¶¶ 26-27, 84 P.3d at 488. The immediacy of access was meaningless as to funds that did not exist. Thus, inferentially, the meaning of "immediate access" in that context would not apply to this case where the funds do exist and there is a legal right to liquidate them.

[7]        The POMS is often referred to as the Supplemental Security Income Program Operations Manual. It was issued by the SSA to further construe statutes governing its operations, chiefly the Social Security Act. *See, e.g., Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012). "Arizona administers AHCCCS . . . pursuant to Title XIX of the Social Security Act." *Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.*, 181 Ariz. 95, 97, 887 P.2d 625, 627 (App. 1994) (citing A.R.S. §§ 36-2901 to -2975 (1993 & Supp. 1994)). Even though the POMS does not impose judicially enforceable duties on courts, it has been held to be entitled to respect to the extent it has the power to persuade. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) (internal quotation and citation omitted); *see also Gragert v. Lake*, 541 F. App'x 853, 856 n.1 (10th Cir. 2013) (stating the POMS warrants respect) (internal quotation and citations omitted). The POMS is entitled to deference so long as it is reasonable and consistent with the Social Security Act. *Lopes*, 696 F.3d at 186.

conservatorships by individuals such as McGovern to access their assets for their support and maintenance.[8]   In the answering brief on appeal, McGovern's representatives argue the POMS's policy that an applicant is not required to commence litigation to render assets "available," *see, e.g., Kubetin v. Astrue*, 637 F. Supp. 2d 59, 64-65 (D. Mass. 2009), means that McGovern was not required to obtain a conservatorship to render his funds available to him.  But, the POMS also states that the fact that an applicant may have to petition a court for withdrawal of his funds in a conservatorship does not make a resource "unavailable for the individual's support and maintenance." POMS, § SI 01140.215, ¶ B.3 (eff. Dec. 4, 2012).  We therefore do not read the POMS's policy against forcing litigation to broadly preclude all resorts to the legal system, such as the use of a court-appointed conservator to make assets available.

¶**14**   At oral argument, McGovern's representatives further urged that the POMS's conservatorship policy applies only to *existing* conservatorships and should not be read to require an applicant to *establish* a conservatorship to access existing resources.  No authority is provided for this position and this court declines to read that limitation into the POMS. *See Brown v. U.S. Fid. and Guar. Co.*, 194 Ariz. 85, 93, ¶ 50, 977 P.2d 807, 815

---

[8]   We will not speculate, as part of the availability analysis, whether the cost of pursuing a conservatorship to access the bank accounts would swallow the value of McGovern's assets.  The accounts' value is not at issue in this case.  While McGovern's representatives argue they could not verify that the value of the bank accounts would "actually" provide McGovern with sufficient resources for his support and maintenance without his daughter's permission, both parties agreed that the denial of ALTCS benefits is appropriate if the accounts were properly counted as resources.  If the accounts' value was relevant, McGovern would have the burden to show that the funds therein were insufficient to provide for his support and maintenance at the time he applied for benefits. *See also Lavine v. Milne*, 424 U.S. 577, 582-83 (1976) (stating that applicants for most government benefits "bear the burden of showing their eligibility in all aspects"); *Aranda v. Cardenas*, 215 Ariz. 210, 216, ¶ 20, 159 P.3d 76, 82 (App. 2007) ("[I]t is generally held that a party seeking a right or benefit under a statute bears the burden of proving that he comes within the ambit of the statute.") (internal quotation and citation omitted).

(App. 1998) (rejecting an assertion without supporting argument or citation of authority).

¶15        Nor did counsel cite any authority to support his additional contention that establishing a conservatorship for the purpose of accessing funds for support and maintenance is equivalent to engaging in litigation. The fact that the POMS addresses litigation and conservatorships in different subsections, *see* POMS, § SI 01120.010, ¶ C.2 (eff. Sept. 26, 2014)[9] (addressing litigation) and ¶ C.3 (addressing conservatorship accounts), suggests they are considered separate and distinct means of accessing resources. *See generally* POMS, § SI 01120.010, ¶ C (identifying and separately addressing access to resources via (1) an agent, (2) litigation, and (3) petitioning a court regarding a conservatorship account). Moreover, regarding litigation, ¶ C.2 specifically states that an applicant is not required to undertake litigation in order to accomplish sale or access "[w]hen there is a legal bar" to doing so. Thus, even if we were to equate establishing a conservatorship with litigation, in this case there was no legal bar to establishing the conservatorship since McGovern indisputably had the legal right to liquidate his assets and, as we hold, force payment from them for his support and maintenance.

¶16        "Medicaid is intended to be the payer of last resort . . . ."[10] McGovern was therefore required to use his available resources before he could be eligible to have Medicaid pay for his care. The AHCCCS Director did not err in rejecting McGovern's attempt to insert a "readily accessible" or other convenience requirement into the applicable law.

## CONCLUSION

¶17        For the foregoing reasons, we conclude substantial evidence supported the AHCCCS Director's finding that McGovern's resources were both "countable" and "available" for purposes of McGovern's ALTCS eligibility for Medicaid benefits. We affirm the AHCCCS Director's decision concluding that McGovern's application was properly denied and we reverse the trial court's inapposite ruling and vacate its award of

---

[9]        We cite the current version of this POMS section as there are no applicable material changes from the relevant date.

[10]        S. Rep. No. 146, 99th Cong., 2d Sess. 1, 312, *reprinted in* 1986 U.S. Code Cong. & Admin. News 42, 279.

attorneys' fees.  As McGovern is not the prevailing party on appeal, we also deny his request for attorneys' fees.



AMY M. WOOD • Clerk of the Court
FILED:  AA