NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JENNIFER PAM PURDY, *Petitioner/Appellee,*

*v.*

ROBERT JOHN PURDY, *Respondent/Appellant.*

No. 1 CA-CV 20-0676 FC
FILED 12-7-2021

Appeal from the Superior Court in Maricopa County
No.  FC2019-052659
The Honorable Dawn M. Bergin, Judge (Retired)

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART**

COUNSEL

The Law Office of Carrie M. Wilcox, PLLC, Phoenix
By Carrie M. Wilcox
*Counsel for Petitioner/Appellee*

Leslie Law Office, P.C., Glendale
By Clement A. Leslie
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

_____

**H O W E**, Judge:

¶1          Robert John Purdy ("Father") appeals the child support order that attributed income to him based on his historical earning capacity. For the following reasons, we affirm the order attributing $135,000 annual income to Father and reverse and remand the past child support order that attributed a different income to correct it to reflect the same attributed income.

### FACTS AND PROCEDURAL BACKGROUND

¶2          Father and Jennifer Pam Purdy ("Mother") were married in 2012 and have four young children. Throughout the marriage, Father worked primarily in real estate and received a disability benefit from the military. Mother petitioned for dissolution in January 2019. The parties agreed to share joint legal decision-making and a parenting plan, but the court did not enter temporary child support orders.

¶3          Father stopped working in real estate and began working at Enterprise Rental Car as a return agent but was laid off in May 2020. The superior court held a trial to address child support, marital waste, and other property issues. Mother testified that during the marriage, Father earned between $100,000 and $150,000 annually. Father did not dispute this at trial, other than to deny earning a "high income in many years" in his pretrial statement. Although Father held active real estate and life insurance licenses, he claimed that he could not find work in real estate.

¶4          In September 2020, the court entered child support orders that attributed an annual income to Father based on his historical earnings. Because Mother started working full-time in March 2020, the court entered two separate orders. The past child support order covered February 1, 2019, to February 28, 2020, and attributed $150,000 annual income to Father. The second, current child support order started March 1, 2020, when Mother began working full-time, and attributed $135,000 annual income to Father. The court noted that Father attempted to conceal his income and

expenditures and provided only a partial tax return from 2017 reporting $91,000 in earnings and undocumented business losses. In considering Father's effort in finding new employment, the court found that Father "provided no evidence for how he went from earning more than $120,000 per year to $11 per hour. He also provided no evidence that he has been actively looking for a job since he was laid off." The court thus found that Father was not a credible witness. Father moved to amend the child support orders and the court denied his motion. He timely appealed.

## DISCUSSION

**¶5** Father argues that the superior court erred by attributing to him an annual income of $135,000 and $150,000 for purposes of child support. We review child support orders for an abuse of discretion. *Engle v. Landman,* 221 Ariz. 504, 510 ¶ 21 (App. 2009). We accept the superior court's factual findings absent clear error, but we review de novo the court's interpretation of the Child Support Guidelines, A.R.S. § 25–320 ("Guidelines"). *Id.*

**¶6** The superior court did not err in considering Father's career change in attributing income for child support because Father was voluntarily underemployed. The Guidelines allow the court to attribute income up to earning capacity only when a parent's unemployment or underemployment is voluntary and unreasonable. Guidelines § 5(E). The court has discretion to consider the reasons for a parent's unemployment or underemployment. *Id.* ("If a parent is unemployed or working below full earning capacity, the court may consider the reasons."). According to Guidelines § 5(E), the court may attribute income after considering

> [t]he parents' assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parents, prevailing earnings level in the local community, and other relevant background factors in the case.

When a parent is unemployed or working below their full earning potential, the superior court may attribute income up to the parent's full earning capacity in determining the child support obligation. *Little v. Little,* 193 Ariz. 518, 521 ¶ 6 (1999). Courts may look at earning capacity and work experience in deciding a parent's income for purposes of child support. *Taliaferro v. Taliaferro,* 188 Ariz. 333, 337 (App. 1996).

¶7 Here, Father stopped working in real estate and sales and started working at Enterprise *after* Mother petitioned for dissolution. He then worked at Enterprise Rental Car as a return agent and was laid off in May 2020. Father did not explain this career change. He contends that his unemployment was not voluntary or unreasonable. He argues, without citation to the record, that both parents reduced their incomes due to the pandemic and because they had to care for four young children. Father's receipt of unemployment benefits supports his claim that he did not voluntarily leave his job at Enterprise; it does not, however, explain why he left the more lucrative real estate and sales careers he had throughout the marriage.

¶8 The superior court was also within its discretion to consider Father's lack of effort in finding employment after leaving Enterprise. *See Patterson v. Patterson*, 102 Ariz. 410, 415 (1967) (refusing to reduce child support because the father was able to work and his obligation to his children "[could not] be diminished because he preferred to be idle rather than industrious or [that] . . . his own improprieties . . . caused a diminution in his income"). Father claimed that he could not find work in real estate, but the court did not find Father credible. Reasonable evidence thus supports the finding that Father was voluntarily underemployed.

¶9 As the superior court noted, Father attempted to conceal his income and expenditures, and the only documentary evidence relating to Father's income was an incomplete 2017 tax return reporting $91,000 in earnings and undocumented business losses. The court properly relied on Mother's testimony that Father earned between $100,000 and $150,000 because it was based on her first-hand knowledge of Father's income during the marriage. *See Aranda v. Cardenas,* 215 Ariz. 210, 219 ¶ 34 (App. 2007) (holding that testimony based on witness's personal knowledge is admissible, even if that testimony is self-serving). Although Father claimed that he earned much less, he failed to present evidence that persuaded the trier of fact. We defer to the superior court's opportunity to judge the credibility of the witnesses first-hand and do not reweigh conflicting evidence on appeal. *See Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009) (citing *In re Estate of Pouser*, 193 Ariz. 574, 579 ¶ 13, 580 ¶ 18 (1999)). Father also argues that the superior court did not properly consider the effect that his disability rating had on his earning capacity. He did not, however, provide evidence to demonstrate that his disability impacted his earning capacity. The court thus did not abuse its discretion in accepting Mother's testimony about Father's earning capacity and in attributing a $135,000 income to Father.

¶10 As noted above, the superior court entered two child support orders to account for Mother's change to full-time employment starting March 1, 2020. The past child support order (covering February 1, 2019, to February 28, 2020) attributed an annual income of $150,000 to Father. This is inconsistent with the court's written finding attributing an annual income of $135,000 to Father. The findings do not suggest any basis for changing the income attributed to Father before March 1, 2020. Thus, we reverse the past child support order and remand to correct the income attributed to Father to correspond with the court's written finding that his attributed income is $135,000 per year and to recalculate past child support.

## ATTORNEYS' FEES AND COSTS ON APPEAL

¶11 Both parties request attorneys' fees and costs on appeal. We deny Father's request because he failed to state any authority. *See* ARCAP 21(a)(2) (appellate court may decline to award fees when a party fails to state the authority for the award). In the exercise of our discretion and after considering the parties' financial resources and reasonableness of their positions, we deny Mother's request for fees under A.R.S. § 25–324. Father is entitled to costs under A.R.S. § 12–342(A).

## CONCLUSION

¶12 For the foregoing reasons, we affirm the child support order attributing $135,000 annual income to Father and reverse and remand the past child support order for recalculation.



AMY M. WOOD • Clerk of the Court
FILED:  AA