**Olivia KUBETIN, Plaintiff**

v.

**Michael ASTRUE, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 08–30203–MAP.**

United States District Court, D. Massachusetts.

July 23, 2009.

Sandra Susse, Western Mass. Legal Services, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER* (Dkt. Nos. 11, 18)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiff has moved to reverse the final decision of Defendant denying her Social Security disability benefits. Defendant has moved to affirm the decision below.

For the reasons stated below, Plaintiff's motion to reverse will be allowed, and Defendant's motion to affirm will be denied.

## II. *FACTS*

The underlying facts are undisputed.

Plaintiff was found disabled and entitled to disability benefits beginning in 1992. In July 2001, she inherited a one-sixth ownership interest in a property in Warren, Vermont with five other relatives. Plaintiff's co-owners have refused either to sell the property or to buy Plaintiff's share. The property in question was valued at $21,800 and thus, her interest was worth $3,633.

Under 42 U.S.C. § 1382(a)(3)(B), an individual with more than $2,000 in available resources may not receive disability benefits. Based on this, Defendant informed Plaintiff on August 28, 2003 that she had not been entitled to receive benefits since July 2001. On October 7, 2003, Plaintiff filed a Request for Reconsideration, which the state agency denied on December 14, 2004. She then filed a timely Request for Hearing before an administrative law judge ("ALJ") on December 20, 2004. The hearing was held on January 10, 2006 and the ALJ issued an unfavorable decision on February 10, 2006.

Before the ALJ, Plaintiff argued that the litigation costs associated with converting her illiquid property interest into cash would diminish any possible recovery far below her proportionate share of the property's value, certainly to less than $2,000. She also contended that any legal action would result in conflict within her family. Finally, she noted instructions contained in the Social Security Administration ("SSA") Program Operations Manual System ("POMS"), which stated that "when there is a legal bar to sale of property (e.g., if a co-owner legally blocks sale of jointly-owned property), we do not require an individual to undertake litigation in order to accomplish sale or access." Pltf's Appeals Council Brief, Tr. at 114 (citing SI 01120.010.C.2). Plaintiff did not present evidence to the ALJ of the costs associated with liquidating her interest despite the ALJ leaving the record open for ten days for her to do so.

■ Before this court, Plaintiff's counsel has submitted a declaration regarding a conversation with a Vermont attorney in which he stated he would ask for a $4,000 retainer before taking on Plaintiff's partition action in state court. Dkt. No. 14, Susse Decl. at 1. Though the Vermont attorney has not submitted an affidavit, the court will take judicial notice of the fact that Plaintiff's attorney's fees in any partition action would be a substantial share of, and possibly exceed, the value of her one-sixth interest.

The ALJ held, in essence, that Plaintiff's one-sixth interest should count as a resource available to her for support and maintenance because she could bring a partition action in state court to force a sale of the property and to dissolve the

tenancy-in-common. ALJ Decision, Tr. at 14–15. He pointed to a section of Vermont law that allowed successful plaintiffs in partition actions to recover costs (though apparently not attorney's fees) from the defendants. *See* 12 V.S.A. § 5161, *et seq.* Moreover, he rejected Plaintiff's argument that the value of her interest should be calculated with reference to litigation costs as well as any encumbrances on the property.

Since the property had no encumbrances, such as a mortgage, he held that she had the full $3,633 available to her. This amount exceeded the statutorily prescribed resource limit of $2,000, rendering her ineligible for Social Security disability benefits. ALJ Decision, Tr. at 15.

After the ALJ issued his decision, Plaintiff then filed a Request for Review by the Appeals Council on April 18, 2006, and that body affirmed the ALJ's decision over two years later on August 12, 2008. Notice of Appeals Council Action, Tr. at 4. This constituted Defendant's final decision.

### III. *DISCUSSION*

Plaintiff has moved to reverse on two grounds: (1) her one-sixth property interest cannot be considered an available resource because the costs associated with converting it into cash would consume any possible residual cash asset; and (2) the ALJ did not follow SSA's own policy statements in the POMS.

The court will first discuss the applicable standard of review, then turn to the issue of costs, and conclude by discussing the ALJ's failure to consider the POMS instructions.

#### A. *Standard of Review*

The court must affirm Defendant's final decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is evidence that a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Hum. Svcs.*, 647 F.2d 218 (1st Cir.1981). Thus, even if the administrative record would support varying conclusions, the court must uphold a benefits determination if supported by substantial evidence. *Ortiz v. Sec'y Health & Hum. Svcs.*, 955 F.2d 765 (1st Cir.1991). However, a denial of benefits will not be upheld if there has been an error of law in the evaluation of a particular claim. *Manso–Pizarro v. Sec'y of Health & Hum. Svcs.*, 76 F.3d 15, 16 (1st Cir.1996). Confronted with an error of law, the court may enter a judgment affirming, modifying, reversing, or remanding the case. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

#### B. *Costs and the Resource Limitation*

A disabled individual may receive Social Security benefits if her resources do not exceed certain annual limits. Since January 1989, the resource limit has been $2,000 for an unmarried individual. 42 U.S.C. § 1382(a)(3)(B). In regulations promulgated by SSA, "resources" includes "any real or personal property that an individual ... owns and could convert into cash...." 20 C.F.R. § 416.1201(a). The regulations further specify that if an individual has the "right, authority or power to liquidate the property or his or her share of the property, it is considered a resource." 20 C.F.R. § 416.1201(a)(1). However, "if a property right cannot be liquidated, the property will not be considered a resource...." *Id.* If illiquid property such as land cannot be converted into cash in twenty days, it "is valued at the

price the property can reasonable by expected to sell for on the open market, minus the value of any encumbrances on the property." 20 C.F.R. § 416.1202(c)(2)(I)-(ii).

The paucity of case law interpreting these provisions is striking, and the parties have pointed to only two cases. In *Chalmers v. Shalala,* on facts similar to this case, the Third Circuit held that the plaintiff's one-fourth interest in inherited property was a "resource" she could liquidate and that the costs associated with selling her interest could not be used to mitigate the value of the available resource. 23 F.3d 752, 753–55 (3d Cir.1994). While the *Chalmers* court expressed deep reservations about this result, it felt "not free to read into the statute or the regulation a requirement that is not there." *Id.* at 755. Notably, SSA has adopted *Chalmers. Social Security Ruling* 95–4C, 1995 WL 470870 (S.S.A. Aug. 7, 1995).

Conversely, in an unpublished decision, the Western District of Texas held that an ALJ erred by not considering the costs to plaintiff of turning her half-interest in a mobile home into cash. *Miranda v. Barnhart,* 2002 WL 1492202 (W.D.Tex. Mar. 29, 2002). As in this case, the plaintiff would have recovered almost nothing in a forced sale. Distinguishing *Chalmers,* the court held that "it would be inconsistent with the purposes of the [Social Security] Act for an otherwise eligible SSI recipient to be rendered ineligible if the sale of a resource would fail to result in cash available to her for her support." *Id.* at *6.

Though SSA has adopted *Chalmers,* the court will not for two reasons. First, while *Chalmers* is binding upon ALJs by virtue

of its adoption by SSA, it is only persuasive authority in this Circuit. Second, *Miranda* states the better rule, one consonant with the structure and purposes of the Social Security Act.

■ As the *Miranda* court noted, the purpose of the statutory scheme is "to ensure that . . . any assets and other funds readily available [to an individual] for support and maintenance should be applied towards those purposes before the state must intervene to provide minimal financial support to that person." *Id.* at *4 (footnote omitted).

Moreover, *Chalmers* is not on point. A careful reading reveals that the court did not consider situations where the costs of a forced sale would, as here, swallow any recovery. In *Chalmers,* the plaintiff *actually* would have realized cash from forced liquidation and thus, the court was not required to consider the regulatory definition of a "resource" as property that an individual "could convert into cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a); *Chalmers,* 23 F.3d at 752.[1]

■ In this case, the court holds that Plaintiff's one-sixth interest in inherited property cannot be considered a "resource" because she *would not* have realized at least $2,000 cash, the statutory resource limit, from a forced sale, due to litigation-related attorney's fees and costs. The court may take judicial notice of the fact that the attorney's fees involved in a partition action here certainly would leave Plaintiff with less than $2,000 from the asset or, more likely, leave her with nothing. The gymnastics involved to retain

---

1. The court's research discloses one case in this Circuit applying *Chalmers. Hunt v. Astrue,* 581 F.Supp.2d 238 (D.Mass.2008). In that case, the court affirmed the ALJ's decision to consider a trust fund containing $202,000 as an available resource. *Hunt* may be distinguished easily since, obviously, any action to revoke the trust would have left the plaintiff with more cash than the $2,000 statutory resource limit.

her disability benefits would place Plaintiff in an untenable Catch–22 that could not have been the intention of Congress.

Common sense and the overall statutory and regulatory scheme limit the calculation of "resources" in 20 C.F.R. § 416.1201(a), in a case such as this, to the liquid cash a claimant *actually* would receive from a forced sale. *Miranda*, 2002 WL 1492202 at *6.

## C. Legal Effect of POMS

SSA has issued a Program Operations Manual System ("POMS"), a set of instructions designed to ensure consistent decisions within the agency. *See* 70 Am. Jur. 2d, Social Security and Medicare § 17 ("POMS is essentially a set of detailed guidelines relating to interpretations and procedures to be followed. . . . It is at least a clear indication of the agency's intended application of the governing law and its views on what that law means.")

The POMS instructions dictate that in order for property to be considered a resource, "an individual must have a legal right to access property. Despite having an ownership interest, the property cannot be a resource if the owner lacks the legal ability to access funds for spending or to convert noncash property into cash." SI 01120.010.B.2.

Significantly, "when there is a legal bar to sale of property (e.g. if a co-owner legally blocks sale of jointly-owned property), *we do not require an individual to undertake litigation* in order to accomplish sale or access." SI 01120.010.C.2 (emphasis added). The illustrative examples appended to these POMS sections discuss a situation where an individual seeking benefits owns a summer cottage with her spouse who refuses to sell it because they are separated. SI 01120.010.D.7. The example concludes: "since we do not require litigation to obtain access, the property is not a resource unless her husband changes his mind about the sale." SI 01120.010.-D.7.b.

■ POMS instructions "do not have binding force, although courts frequently consider them in interpreting the SSA's statutory and regulatory policies." *Bitsacos v. Barnhart*, 353 F.Supp.2d 161, 168 (D.Mass.2005); *see also St. Mary's Hosp. v. Blue Cross & Blue Shield*, 788 F.2d 888, 890 (2d Cir.1986); *Davis v. Sec'y of Health and Human Svcs.*, 867 F.2d 336, 340 (6th Cir.1989). Courts in this Circuit have required SSA to follow the standards set forth in POMS repeatedly. *Da Rosa v. Sec'y Health & Human Svcs.*, 803 F.2d 24, 26 (1st Cir.1986) (vacating and remanding "for proceedings consistent with the interpretive guidelines set forth in the POMS instructions"); *Waters v. Bowen*, 709 F.Supp. 278, 281–82 (D.Mass.1989); *accord Avery v. Sec'y of Health and Human Svcs.*, 797 F.2d 19, 24 (1st Cir.1986) (construing, in *dicta*, POMS "as being the latest word on departmental . . . policy, committing the Secretary and superceding any inconsistent discussion and examples.").

■ Here, neither the ALJ nor the Appeals Council considered, much less applied, the POMS instructions. *See* ALJ Decision, Tr. at 14–15; Notice of Appeals Council Action, Tr. at 4. Though Plaintiff briefed the issue, the POMS instructions do not appear in the decisions below. Pltf's Appeals Council Brief, Tr. at 114. Thus, the court cannot affirm where the agency committed a clear error of law by forcing Plaintiff to engage in litigation despite its own clearly stated policy not to require it. *See* SI 01120.010.C.2.

Defendant argues that the term "litigation" in SI 01120.010.C.2 does not include a partition action in state court and instead encompasses, *inter alia*, divorce proceedings as envisioned in the illustrative exam-

ple. SI 01120.010.D.7. However, the text of the POMS instruction makes no such distinction between types of "litigation" and the court declines to read that limitation into an otherwise clear policy statement.

Defendant also contends that, in combination with the court's interpretation of "resources" in 20 C.F.R. § 416.1201(a), a broad reading of the term "litigation" could produce the absurd result that the co-owner of a multimillion dollar property may still claim disability benefits if litigation would be required to partition it. This argument has two defects. First, this case has no such facts. Here, Plaintiff *could not* realize at least $2,000 cash, the statutory resource limit, from the forced sale of her property. Second, that hypothetical situation is addressed squarely by *Chalmers*. Where a plaintiff *actually* will realize cash over the cut-off from a sale, she is properly deemed to have "resources" she must use before receiving government benefits.

In sum, the unavoidable facts of this case, Defendant's own Program Operations Manual System, and the obvious intent behind the Social Security Act all dictate reversal of Defendant's final decision pursuant to 42 U.S.C. § 405(g).

## IV. *CONCLUSION*

For the foregoing reasons, Plaintiff's Motion to Reverse (Dkt. No. 11) is hereby ALLOWED. Defendant's Motion to Affirm (Dkt. No. 18) is hereby DENIED. The clerk is ordered to enter judgment for Plaintiff. This case may now be closed.

It is So Ordered.